CARRIE ILKO BARTON, a widow, BERTHA L. PASCHALL, *et vir*, v. MOLINE PROPERTIES, INC.

164 So. 551.
Division A.
Opinion Filed July 6, 1935.
On Rehearing December 13, 1935.

684

*S. P. Robineau,* and *Garland M. Budd, Jr.,* for Appellants;
*Evans Mershon & Sawyer, Robert L. Thompson,* and
*J. M. Flowers,* for Appellee, Moline Properties, Inc.; *Loftin,*

*Stokes & Calkins,* for Appellees, J. L. Malone, M. J. Malone, Marmal Holding Company, Collins Avenue & Ocean Investment Co., and Enolam Land Company.

DAVIS, J.—This was a bill in equity to remove clouds and quiet title to certain property owned by appellees in Fisher's First Subdivision of Alton Beach, a restricted residential tract of land located in the City of Miami Beach, Florida. The appellants, together with numerous others constituting all of the owners' of lots in the affected development, were made parties defendant. The decree of the Chancellor was rendered on general demurrer to the bill filed under the old practice. The demurrer was overruled and a final decree entered thereon after decree *pro confesso.* So the questions to be decided are such only as are properly determinable on the face of the bill of complaint upon which the final decree granting the relief prayed was rendered.

Appellants are the owners of certain lots in the above mentioned subdivision, the deeds to which entitle them to the benefit of certain covenanted restrictions that were imposed upon the use of lots sold in Fisher's First Subdivision of Alton Beach by the original owner and developer thereof, as follows: (1) prohibition against the erection on any lot of a residence building, except at a cost of at least $7500.00; (2) requirement that any building erected should be such only as would be in conformity with plans, specifications and location approved by the original grantor, its successors or assignees; (3) construction of buildings to be limited to a one family dwelling and one private garage; (4) no other kind of dwelling house or business establishment of any kind to be erected or placed on said lots' at all with certain exceptions not material to this case; (5) additional incidental restrictions not neces-

sary to enumerate but designed to make the foregoing re-
strictions effective.

As a means of enforcing the above mentioned restric-
tions, each deed contained the following express condition,
the acceptance of which was implied by each grantee and
became binding upon him as such, namely:

"Violation in whole or in part of any of the above limi-
tations and restrictions by the grantee, her heirs or assigns,
or by the owner or owners of the real estate herein conveyed
by virtue of any judicial proceedings, shall cause the said
above described and conveyed real estate to immediately
revert to the grantor, its successors or assigns, and shall
entitle the grantor, its successors or assigns, to immediately
enter upon said property without notice, and take possession
of the same, with full title in fee simple, together with all
improvements thereon."

The object of appellee's bill was to invoke the aid of the
Chancery Court to have such restrictions, insofar as they
applied to complainant's lot involved in this controversy,
decreed to have become unenforceable and extinguished,
both in equity and at law, and to have the same adjudged
as cancelled, removed and forever barred as a cloud upon
complainant's title to the land described in the bill and
prayed to be freed therefrom. Osius v. Barton, 109 Fla.
556, 147 Sou. Rep. 862.

To the end of the relief prayed, the bill of complaint
averred in substance as follows—the allegations being ad-
mitted by the demurrer:

That at the time of the original deed from the Alton
Beach Realty Company to Marie Vance Bowman (plain-
tiff's ancestor in title), the locality of plaintiff's land was
suitable for private residential purposes, and was so pur-
chased by plaintiff's ancestor in title; that at that time the

location of said land was private, quiet and partook of the general nature and characteristics of the other restricted lots in said subdivision, which were in the immediate vicinity, and were suitable and valuable for residential purposes for the erection of one-family dwellings thereon, and the performance of and compliance with the said restrictions set forth in the bill was possible and practicable, and for the benefit of plaintiff's lots as well as the other lots in the subdivision.

That at the time of the original conveyance of the subdivider, the City of Miami Beach had a population of less than five hundred persons; that since that time, swamps and lowlands within the city limits have been filled in, practically all the land within the limits of the city have been platted and subdivided; that at the present time, the City of Miami Beach extends from the southern tip of the peninsula north for a distance of several miles; that it now has a permanent population of twelve thousand and an estimated winter population of thirty-five or forty thousand persons; that Collins Avenue (running north and south parallelling the western boundary of plaintiff's lots) is one of the main arteries of traffic in the city of Miami Beach, extending from the southern boundary to the northern boundary of the city; that both sides of Collins Avenue have been and are given over to commercial and business purposes south of Tenth Street, and the east side of Collins Avenue has been given over to commercial and business purposes from the south end thereof up to and adjoining the southern boundary of the plaintiff's lots; that is to say, those lots which are not vacant and unoccupied are used indiscriminately for residence, apartment house, hotel, stores, marketing, amusements and other commercial purposes; that the land adjoining the plaintiff's Lots 1, 2, 3 and 4,

Block 77, on the south thereof (not part of Fisher's First Subdivision of Alton Beach) has been subdivided into twelve lots numbered one to twelve, of a subdivision known as Harrison and Hays Subdivision of the Whitman Tract; that Ocean Drive, which is the avenue east of Collins Avenue, and the avenue closest to the Ocean, has been widened and paved by the city by and through the condemnation proceedings and the appropriation of plaintiff's land as aforesaid; that said paving and sidewalks have been extended through, upon and across the plaintiff's land into Fifteenth Street, which borders the plaintiff's land to the north, so that now a steady stream of traffic flows through and around the plaintiff's property; that the lots of land abutting upon Ocean Drive from its southern terminus to the southern boundary of plaintiff's land are given over to and chiefly used for commercial purposes.

That there is now in actual operation upon lots 1, 2, 3, and 4, of Harrison and Hays Subdivision, between Ocean Drive and the Atlantic Ocean, adjoining plaintiff's land to the south, a casino known as "Villa Venice," wherein a cabaret, restaurant and roadhouse is operated, patrons are furnished with food, entertainment, music and dancing, bathrooms and bathing suits, and bathing privileges for patronage of the public generally, which continues until the early hours of each morning; that the public generally and patrons of the casino especially, habitually park their automobiles on Ocean Drive and Fifteenth Street, through and around the plaintiff's property; that by reason of said condemnation of the plaintiff's land and extension of Ocean Boulevard and the improvement of Fifteenth Street, plaintiff's land is now geographically a part of and is embodied in the block of land in which the casino is constructed and

operating; and in which a miniature golf course has been operated for profit for the use of the public generally.

What by said condemnation, plaintiff's property has been forever impressed with the nature and characteristics of the adjoining property to the south in the same block, and to the commercial uses and purposes of business to which said lots are now devoted; that by the condemnation proceedings, the City of Miami Beach has made it impossible and impracticable to use plaintiff's land for residential purposes or to erect a one-family dwelling, or to erect a building thirty feet away from the east line of said parcel of land, and said restrictions, without fault of plaintiff, have been breached, each and every, and has rendered the quiet and privacy of said premises impossible and permanently destroyed the value and use of plaintiff's land for residential purposes.

That neither the former nature, state and characteristics of plaintiff's land, nor its former value for residential purposes, can be restored, and its sole value and adaptability for use at the present time is determined by the use of the property adjoining it on the south of said property, facing Ocean Drive, and of said property along the east side of Collins Avenue south of plaintiff's property, that is to say, by its use for commercial purposes relieved of the said residence and building restrictions hereinbefore set forth, plaintiff's property has no value as a residential property, but has a great value and is readily usable and marketable as business and commercial property.

That by reason of the condemnation and appropriation for street purposes of said strip across plaintiff's land and the nature of the adjoining land to the south, the original design of the parties and the purpose for which restriction as to the plaintiff's property were imposed have come

to an end, and the restrictions are no longer possible or en-forceable.

That notwithstanding the foregoing, the defendants, as owners of interest in other lots in said subdivision, have an apparent right to insist upon and enforce the restrictions previously enumerated, and this apparent right constituted a cloud upon the title of the plaintiff which should be quieted and confirmed.

That complainant offered to release each and every of the defendants from every liability to the plaintiff for per-formance of each and every of the restrictions imposed upon defendants' lots.

Upon decree *pro confesso,* after the demurrer to the bill had been overruled, the Chancellor having heard and con-sidered certain evidence and having seen and inspected the community in which the property in controversy was sit-uate, determined and found in his final decree that the change in conditions relied upon to support the equity of complainant's bill, entitled complainant to relief, and ad-judged and decreed that the building and other restrictions and conditions that had been imposed upon complainant's lots, 1, 2, 3, and 4, of Block 77, of Fisher's First Sub-division of Alton Beach, by the restrictive covenants in the deed from The Alton Beach Realty Company conveying the said lots to complainant's ancestor in title, Marie Vance Bowman, as carried forward in mesne conveyances exe-cuted subsequent thereto, had become extinguished and un-enforceable, and should be cancelled, vacated, annulled and removed, and forever barred as clouds upon the title of complainant, Moline Properties, Inc., its successors and assigns to said property, and that the title of complainant to said property should be forever quieted, confirmed and established against such restrictions, and the apparent rights

of defendants severally to enforce the same, and that said defendants should be furthermore severally forever enjoined from asserting or enforcing the same, by suit at law or in equity, or otherwise, against complainant or those claiming by title derivative from it.

In the very able brief filed by appellants in this case it is stated that, notwithstanding the entry of a decree *pro confesso* against them in the court below, the settled law is to the effect that appellants nevertheless have the right by their appeal to bring the insufficiency of the bill of complaint before this court for review on its merits, and that upon the consideration of the sufficiency of such bill to state a cause in equity for the relief prayed and awarded, that such bill cannot be sustained as good unless it sets forth, not the evidence, but every material averment of fact to complainant's right of recovery therein relied upon. That appellant's contention in this regard must be upheld as well founded, is not to be gainsaid in the light of our own decisions on the subject. Weatherbee v. Dekle, 102 Fla. 1057, 136 Sou. Rep. 708.

It is the settled rule in this, as well as other jurisdictions, that so complete must be the averments of the ultimate facts in a bill of complaint in equity that, on general demurrer to (or upon motion to dismiss it under our new practice) such bill, or upon application for a final decree on it after decree *pro confesso,* the Chancellor can, without evidence, perceive the equity of complainant's prayer and be able to affirm that complainant is entitled to the relief prayed; that relief can only be granted in cases in equity upon due allegations as well as proofs, and that the latter will never be allowed to supply omissions or defects in the former. Jackson Realty Co. v. Yeatman, 219 Ala. 3, 121 Sou. Rep. 415;

Weatherbee v. Dekle (Fla.), *supra;* Keil v. West, 21 Fla. 508; Lybass v. Fort Myers, 56 Fla. 817, 47 Sou. Rep. 346.

Allegations of ultimate facts capable of being admitted or proved by evidence, are the only premises that will uphold a chancery decree, even after decree *pro confesso,* because a decree *pro confesso* is not to be taken as an admission of the equity of the bill but only an admission of the truth of the facts therein that are well pleaded and which the law will allow to be proved by competent evidence when and if put in issue,  And facts alleged which the law will not permit to be confessed on the part of the particular defendant, cannot be considered as admitted by a demurrer or by a decree *pro confesso,* but if provable at all, must be established by competent evidence sufficient to establish their existence, even though undenied by the defendant in terms. Amos v. Gunn, 84 Fla. 285, 94 Sou. Rep. 615, (4th and 5th headnotes); Brickell v. Trammell, 77 Fla. 544,  82 Sou. Rep. 221 (12th headnote); Martin v. Dade Muck Land Co., 95 Fla. 530; 116 Sou. Rep. 449 (35th headnote).

So the proposition to be decided on this appeal is whether or not the appellee's bill filed in the court below, so completely set forth every material averment of fact necessary to complainant's right to the relief awarded that the Chancellor was warranted in finding thereon, without evidence that the allegations thereof considered on application for a final decree after decree *pro confesso,* entitled complainant to the relief prayed for and awarded.  Our conclusion is that the decree entered in this case was well within the affirmative of the proposition just stated.

While the deed by which appellee's ancestor in title obtained her title to the lots here in controversy granted to the appellants as other owners of lots in the affected subdivision an equitable interest sufficient to entitle them to have main-

tained and enforced the building and use restrictions that the grantor had imposed on each of the grantees of lots in 'such subdivision, for the common use, benefit, protection and enjoyment of all of them in common, no time was specified during which such restrictive covenants were expressly limited by the parties to endure.

Such restrictions were therefore subject to the general rule applicable to restrictive covenants of this kind that where the time during which a restrictive covenant is to endure has not been expressly limited by the parties, it should be implied that some reasonable limitation adapted to the nature of the case was intended, and that such restrictions as the stated covenants imposed on the use of any particular grantee's property, being in derogation of the otherwise free use and enjoyment of same, should be construed as extending for no longer period of time than the nature of circumstances and purpose of their imposition would indicate as reasonable for the duration of their enforcement without undue and inequitable prejudice to the property rights purchased and acquired by the original grantee and his successors in title, subject to such restrictive covenants. Gardner v. Maffitt (Mo. Sup.), 74 S. W. (2nd) 604, 95 A. L. R. 452.

Applying the foregoing rule of construction to the covenants that were sought by this suit to be declared extinguished and cancelled, it appears from the circumstances pleaded in the bill, as hereinbefore set forth, that the time has arrived when it would no longer be equitable or just to enforce the restrictive covenants resting upon complainant's right of enjoyment and use of the property to which it holds title, all because of subsequent developments and happenings in the locality over which appellee had no control, and that in consequence such restrictive covenants must be

construed as having run for the reasonable length of time originally contemplated for their enforcement, and therefore to have become extinguished and cancelable in a court of equity in order to remove the cloud thereof from appellee's title. Osius v. Barton, 109 Fla. 556, 147 Sou. Rep. 862, 88 A. L. R. 394; Notes 89 A. L. R. 813; Gardner v. Maffit, *supra*.

In cases like this, each particular controversy over the term of duration of restrictive covenants on property uses must be decided on the equities of each particular situation as it is presented. The test for determining such equities is ordinarily whether. or not the original purpose and intention of the parties to such restrictive covenants can be reasonably carried out, in the light of alleged materially changed conditions which are claimed to have effectually frustrated their object without fault or neglect on the part of him who seeks to be relieved by decree in equity from their further observance. Trustees of Columbia College v. Thatcher, 87 N. Y. 311, 41 Am. Rep. 365; Baily v. DeCrespiginy, L. R. 4 Q. B. 180, 15 Eng. Ruling Cases 799; Osius v. Barton (Fla.), *supra*. The doctrine to be applied in such cases is that expressed in the maxim *"lex non cogit ad impossibilia,"* and it is particularly in point in cases wherein no specified reasonable term for the duration of restrictive covenants has been definitely set forth in the covenants themselves.

The final decree appealed from was rendered in consonance with the equitable principles hereinbefore discussed, so it follows that said decree is free from error and must be accordingly affirmed.

Affirmed.

WHITFIELD, C. J., and BROWN, J., concur.

ELLIS, P. J., and TERRELL and BUFORD, J. J., concur in the opinion and judgment.

## ON REHEARING

BUFORD, J.—This case is before us on rehearing granted pursuant to filing of opinion herein on July 6, 1935.

It appears that in the determination of the merits in this case the court below followed the rule as stated by us in the case of Osius, et al., v. Barton, et al., 109 Fla. 556, 147 Sou. 862, in which we said:

"Because of the nature of covenants imposing restrictions on the use of real property, whether sought to be enforced as between covenanter and covenantee, or whether treated as enforceable because running with the land for the benefit of the parties for whose protection they were made, it seems to be now generally recognized by the best considered cases on the subject, that all the rules as to ending easements and profits, including those as to abandonment of the dominant owners, apply to such covenants, including the recognition of an implied condition in the original grant that the general policy of the law to dispense with encumbrances on title shall prevail, where enforcement of restrictive covenants is no longer of general usefulness, nor capable of serving the purpose for which the restrictions were imposed."

In the original opinion in this case it is said:

"Such restrictions were therefore subject to the general rule applicable to restrictive covenants of this kind that where the time during which a restrictive covenant is to endure has not been expressly limited by the parties, it should be implied that some reasonable limitation adapted to the nature of the case was intended, and that such restrictions as the stated covenants imposed on the use of

any particular grantee's property, being in derogation of the otherwise free use and enjoyment of same, should be construed as extending for no longer period of time than the nature of circumstances and purpose of their imposition would indicate as reasonable for the duration of their enforcement without undue and inequitable prejudice to the property rights purchased and acquired by the original grantee and his successors in title, subject to such restrictive covenants."

And, again, it is said:

"In cases like this, each particular controversy over the term of duration of restrictive covenants on property uses must be decided on the equities of each particular situation as it is presented. The test for determining such equities is ordinarily whether or not the original purpose and intention of the parties to such restrictive covenants can be reasonably carried out, in the light of alleged materially changed conditions which are claimed to have effectually frustrated their object without fault or neglect on the part of him who seeks to be relieved by decree in equity from their further observance."

It will be borne in mind that the decree was entered on testimony taken pursuant to decree *pro confesso* on the bill of complaint. Therefore, the cause was tried on allegations of a bill of complaint which were held sufficient on demurrer, and testimony taken in support of those allegations no affirmative defense having been pleaded.

In view of these conditions, we hold it would not be proper for us to now reverse the chancellor who followed the law as definitely expressed by this Court in Osius v. Barton, *supra*.

We shall not in this case attempt to say what the result should have been, or might have been, had the defendants

in the court below set up by defensive pleadings such defenses as may have accrued in their behalf by reason of the condemnation proceedings which resulted in the changed condition which the complainant greatly relied upon as the basis for its relief.

We are convinced that the language used in Osius v. Barton hereinbefore quoted and that used in the original opinion hereinbefore quoted should be qualified by the following statement:

"Where, however, it appears that such covenant or restriction is for the exclusive benefit of and that it is still of substantial value to the dominant lot, notwithstanding the changed condition of the neighborhood in which the said lot is situated, a court of equity will restrain its violation."

This, when added to the statements above referred to, enunciates a correct statement of the law in such cases. Pomeroy's Equity Jurisprudence, 4th Ed., Vol. 4, pages 3971-2; 14 R. C. L. 400, paragraph 100; 18 C. J. 401; Landell v. Hamilton, 175 Pa. 327, 34 L. R. A. 227, 34 Atl. 663; Lattimer v. Livermore, 72 N. Y. 174; Rowland v. Miller, 139 N. Y. 93, 22 L. R. A. 182, 34 N. E. 765; Holt v. Fleishman, 75 Ap. Div. (N. Y.)

The rule as so stated will be applied in future cases.

It may be further stated that the decree in this case must be deemed and considered as applying only to that particular lot of the subdivision upon which the restriction is sought to be lifted and should in no way affect restrictions as applied to other lots in the subdivision.

The writer and Mr. Presiding Justice ELLIS and Mr. Justice BROWN are of the opinion that the decree in this case should be reversed because the record entirely fails to show that the restrictions are not of substantial value to the dominant lot and also because of the fact that the

changed conditions upon which the complainant based its right of having the relief prayed is largely, if not entirely, attributable to the condemnation of a part of the lot involved for street purposes and it must be assumed that the owners of the lot affected by the condemnation received full compensation, not only for the value of the portion of the lot taken for street purposes but also for the damage to the remainder of the lot by reason of such taking, and that, having been so compensated, the owner of the remaining part of the lot is not now entitled to have a court of equity lift the restrictions and thereby convert the property to a use which will make it more valuable to the owner than it would have been had the change not occurred and the restrictions been lifted.

The other members of the Court hold that the decree should be affirmed although the language used in Osius v. Barton, *supra,* and in the original opinion in this case should now be reformed as above suggested for the future guidance of the bench and bar.

The result is that the decree is reaffirmed on rehearing. So ordered.

ELLIS, P. J., and TERRELL, J., concur.

WHITFIELD, C. J., and BROWN, and DAVIS, J. J., concur in the opinion and judgment.