Frederick J. Osius, Mary D. Osius, *a feme sole,* Louise Zabransky, doing business under the firm name and style of Louise's Beauty Salon, and F. J. Osius Realty Company, v. Carrie Ilko Barton, a widow, Dora Burr Bigelow, a widow, Alphonsus L. Bowles, Fred D. Breit, R. B. Burdine, N. C. Dorn, joined by her husband, J. L. Dorn, Jacob Fabian and Rose Fabian, his wife, C. J. Felber, Meybeck Farms, Inc., a Florida corporation, P. W. Miller, William J. Morris, Berthan L. Paschall, joined by her husband, C. H. Paschall, Harry A. Race, William C. Schott, and Eleanor T. Shepard, a widow.

176 So. 65.
Opinion Filed July 31, 1937.
Rehearing Denied September 15, 1937.

*James M. Carson* and *Charles A. Morehead,* for Appellants;

*S. P. Robineau* and *Garland M. Budd, Jr.,* for Appellees.

Per Curiam.—Several years ago some of the appellees as plaintiffs filed their bill of complaint against the appel-

lants seeking to enjoin them from maintaining certain businesses on certain land owned by the Osius Defendants in Fisher's First Subdivision of Alton Beach in Miami Beach, Florida, upon the ground that the businesses were being maintained in violation of building restrictions placed upon the subdivision by the original owners of the subdivision in the deed by which they claimed title and which restrictions were binding upon subsequent grantees, including the defendants, appellants here.

Appellants answered the bill and filed a cross bill. Both the answer and the cross bill alleged that the growth of Miami Beach and the changes in the neighborhood of the real estate described in the bill had been such that the land embraced in the subdivision was no longer suitable for residential purposes and that the enforcement of the restrictions would work an oppressive burden upon the appellants and hinder the growth of Miami Beach.

The Circuit Judge sustained the answer, but struck out and dismissed the cross bill. From that interlocutory order Mary D. Osius and F. J. Osius Realty Company took an appeal to this Court. In a carefully considered opinion this Court, speaking through Mr. Chief Justice DAVIS, summarized the allegations of the original bill and the answer and cross bill as follows:

"The sixteenth and seventeenth paragraphs of the defendants' cross bill aver in substance that the subdivision known as Alton Beach was intended to constitute a strictly small town residential development of the town of Miami Beach, then a little village of about 700 population; that since the original platting in 1914, as well as since the deed from Alton Beach Realty Company to cross complainants in 1921, the large and thriving City of Miami Beach has superseded the small village of Miami Beach, that the prop-

erty owned by cross complainants has, by reason of the surrounding property developments, gradually been converted from residential property to business property without fault on their part, so that their Cold holdings are no longer suited or desirable for strictly residential purposes; that the population of Miami Beach has in the course of years advanced from 700 to 20,000 people; that by reason of the development of Miami Beach from a village to a thriving city, as well as because of the attendant change which has come about in the developed properties in the locality of Alton Beach Subdivision, that the cross complainants' property is now almost useless to them as residential property, and has practically no income value as residence property, although heavily assessed for burdensome taxes because of its aforesaid location in the vicinity of business property; that a due return on said property can only be realized from it as business property and not as residential property; that to enforce and continue the requirement that cross complainants' property be used solely as residence property would be a practical confiscation of the same when on the other hand it would be for the best interest of the growth and prosperity of the City of Miami Beach that the restrictions be removed so as to avoid undue oppression of cross complainants with respect to a restriction no longer capable of serving the purpose for which it was imposed in the first instance, and which is accordingly obsolete and such as ought not to be specifically enforced by a court of equity, but on the contrary should be cancelled and removed of record.

"The foregoing two paragraphs do not set up any grounds endeavoring to set aside the alleged restrictions involved in this suit as to any other land in the subdivision except that of the particular cross complainants. As to them the change

in the character of Miami Beach is alleged to have been so radical, that there can in equity and good conscience be no further life to a restriction prohibiting the *use* of cross complainants' particular lots of land for business and commercial purposes, in view of the purpose and intendment of such a restriction as applied to cross ·complainants' property in the first instance. They are therefore within the general rule, that equity will not take cognizance of a restriction imposed as to the use of property where by reason of a change in the character of the neighborhood not resulting from a breach of such conditions, it would be oppressive and inequitable to give the restriction effect, as where the enforcement would have no other result than to harass or injure the defendant without accomplishing the purpose for which it was originally made." (Citing authorities.)

This Court reversed the lower court in part and remanded the cause with directions to enter an order duly amended to conform to the opinion rendered and have such further proceedings thereafter as might be according to law. See Osius v. Barton, 109 Fla. 556, 147 So. 862; 88 A. L. R. 934. This Court held on the first appeal that the demurrers to and motions to strike paragraphs 1, 2, 3, 16 and 17 of the cross bill should have been overruled; also that the general demurrer to such cross bill should have been overruled to so much of the cross bill as remained after the sustaining of the special demurrer and the granting of the motions to strike those paragraphs of such bill which were in the opinion adjudged to be bad.

Paragraph 1 of the cross bill gave the names and places of residence of cross complainants and the cross defendants. The second paragraph alleged the acquirement of the land in question by the Alton Beach Realty Company in 1913 and the filing of the plat of the Subdivision in 1914.

The third paragraph alleged that the Alton Beach Realty Company was organized principally by Carl G. Fisher and the land described in the second paragraph was developed under his direction and supervision, and contained other allegations not necessary to be mentioned. Thus the first three paragraphs were introductory in their nature and the sixteenth and seventeenth paragraphs which are summarized in the opinion rendered on the former appeal set forth the vital grounds upon which cross complainants sought to have the restrictions on their lots cancelled.

When the cause went back to the lower court, that court entered its order requiring the cross defendants to file pleadings to those portions of the cross bill held good by this Court. Thereafter an answer to the cross bill was filed by the Alton Beach Realty Company, and also an answer was filed by the original complainants and cross defendants. Upon the issues thus made a considerable amount of testimony was taken. Thereafter the Circuit Court entered its final decree granting an injunction in accordance with the prayer of the original bill and dismissing the cross bill, from which the original defendants, being the cross complainants in the court below, have again prosecuted an appeal to this Court. The original exhibits were ordered and certified transmitted to this Court, but apparently they have never been received here, at least they cannot be found, and in the office of the clerk of this Court there is no record that they have ever reached this Court.

The transcript of the record on the prior appeal is not incorporated in the present transcript, but is by stipulation made a part of the record on this appeal.

The main question which appears to be presented here is whether the facts alleged in that portion of the cross bill which this Court held to be good have been proven. Not

having the exhibits before us, which were before the Chancellor, we cannot at this time pass final judgment on that question. We might observe, however, that the oral testimony, as set forth in the record on this appeal, appears to strongly support the allegations of the cross bill. Indeed, it seems to us that the weight and probative force and effect of the evidence sustains the material allegations of the cross bill. Whether the missing exhibits, which it appears consisted largely of photographs and maps, would lead to a contrary conclusion, we, of course, are unable at this time to say.

The law of this case was settled in the opinion and decision on the prior appeal, and must govern this case through all its subsequent stages and proceedings. This principle is so well settled that we deem it unnecessary to cite any authorities in support thereof. Nor is it necessary for us to discuss the qualification of the opinion rendered on the former appeal in this case as made in the later case of Barton v. Moline properties, Inc., 121 Fla. 683, 164 So. 551. Whether such qualification would have had any influence on the decision in this case if it had been embraced in the opinion rendered on the former appeal in this case is likewise unnecessary for us here to determine. Suffice it to say the qualification referred to was not embraced in the opinion of this Court on the former appeal, and that opinion, as above stated, settled the law of this case on this, the second appeal. We would not be understood as intimating that the slight qualification made in the case of Barton v. Moline Properties, Inc., by way of adding to the statements of legal principles contained in the opinion in Osius v. Barton would, if applied here, require any different conclusion on this appeal.

The evidence shows that at the time this subdivision was

platted in 1914, it was a part of a large tract of land acquired by Carl G. Fisher for the Alton Beach Realty Company. This Company, which was controlled by Fisher, formed this small subdivision, about four blocks long, North and South, and two blocks wide, East and West, fronting on the ocean, and platted it, and developed it into a beautiful and highly restricted subdivision. Right in the heart of the subdivision on the ocean front, Carl G. Fisher erected the first residence, a rather palatial residence, which he subsequently sold and which for the past six or seven years, according to the testimony, has been used as a much frequented "Night Club," to the annoyance of the immediate neighborhood. The evidence also shows that when this property was acquired by the Alton Beach Realty Company in 1913 a large mangrove swamp covered most of what is now the beautiful City of Miami Beach, and that since this property was developed into a high class residential subdivision all the changes both within and without the subdivision alleged in the cross bill have taken place. It would be interesting if we had the time to review the evidence which shows the marvelous and rapid development of Miami Beach and the changes which have taken place in the neighborhood of this its first residential subdivision; all of which goes to show that the very rigid building restrictions which rested upon the property in this subdivision were quite reasonable and beneficial to those who had built homes in the subdivision up to a comparatively few years ago, but that the radical changes which have taken place during the past ten or fifteen years in the surrounding area have been such as to render those restrictions now unreasonable and oppressive.

In view of the loss of the exhibits which were transmitted to this Court by the lower court, we have reached the con-

clusion that the best disposition for us to make of this cause at this juncture is to reverse the decree appealed from and remand the cause to the Circuit Court for Dade County for its reconsideration, and if thought advisable by the Chancellor, for a rehearing, and for disposition thereof in accordance with the legal principles enunciated and rulings made by this Court on the former appeal.

Reversed and remanded with directions.

TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.