**ELLA GRUBER, a single woman, v. JOHN P. COBEY, incompetent, by John W. Prunty, as Curator of his Estate.**

12 So. (2nd) 461                                January Term, 1943
March 23, 1943                                         Division A
Rehearing Denied April 5, 1943

*Stanley Milledge* and *Ernest A. Roth,* for appellant.
*Nestor Morales,* for appellee.

TERRELL, J.:
In December, 1939, Ella Gruber, a single woman in her middle forties was the owner and operator of the Bali Import Ship in the Little River business district of Miami. John P.

Cobey was an elderly single man who had retired and was boarding in the same community. Some time in December of the year stated, he called at the Bali Import Ship. Miss Gruber was courteous to him, his calls were repeated, they lunched together, and a warm friendship sprang up between them.

Mr. Cobey was a man of means, without family or close relatives and because of Miss Gruber's kindness to him, became interested in doing something for her in return. In November, 1940, after looking at many properties about Miami, he purchased Lot 15 of Block Six, Passadine Park. In March, 1941, he conveyed the lot to Miss Gruber and perfected arrangements with a contractor to construct a house thereon for the sum of $5,700. This contract and the deed were delivered to Miss Gruber prior to June 11, 1941. On the last named date, Mr. Cobey also gave Miss Gruber his check for $3000 which with the proceeds of a mortgage to be executed by her on the property was to be used for constructing the house but a mistake made in the description of the lot in preparing the deed had to be corrected before the execution of the mortgage.

Shortly after June 11, 1941, Mr. Cobey became physically and mentally ill and has not yet regained his mental faculties. John W. Prunty, the appellee, was on application of the sheriff of Dade county, appointed curator of his estate and brought this suit in September, 1941, alleging that Mr. Cobey was mentally incompetent when he transferred the money to Miss Gruber and that she induced the transfer through fraud and undue influence. Miss Gruber forthwith deposited the money in the registry of the court, filed an answer in which she denied the material allegations of the bill, and attached thereto a counter claim wherein she prayed that the moneys be returned to her and that the description in the deed be corrected by the curator.

The chancellor found that Mr. Cobey was sane on June 11, 1941, but that he and Miss Gruber had embarked on a joint adventure which was in progress at the time Mr. Cobey became incompetent and that Miss Gruber had shown no reason in law or fact why she should retain the funds en-

trusted to her. He decreed accordingly and Miss Gruber appealed.

It is first contended that the judgment should not stand because the chancellor awarded the complainant relief on a theory wholly different from that relied on in the pleadings.

In the bill of complaint, it is alleged that Miss Gruber procured the $3000 from Mr. Cobey, a mentally incompetent old man, by fraud and undue influence. The evidence failed completely to prove either charge and the chancellor so found. He found however that a joint adventure had been embarked in between the parties and that mental incompetency on the part of Mr. Cobey prevented its completion.

In our system of jurisprudence, it is axiomatic that a judgment must respond to the issues made by the pleadings. The judgment in this case fails to meet that requirement. In fact it was predicated on theory not set up in the pleadings or warranted by the evidence. It is, therefore, void and ineffective. Howard v. Goodspeed, 101 Fla. 699, 135 So. 294; Barton v. Moline Properties, Inc., 121 Fla. 683, 164 So. 551; Briles v. Bradford, 54 Fla. 501, 44 So. 937; Reynolds v. Stockton, 140 U.S. 254, 11 Sup. Ct. 773, 35 L.Ed. 464.

Other questions are argued but the status of the $3000 and the error in the description of the lot will become very material when the case goes back for reconsideration so we devote the remainder of this opinion to these matters.

The record does not reveal a syllable of evidence pointing to fraud, undue influence, or overreaching on the part of Miss Gruber. On the other hand, it shows affirmatively that she is a lady of culture, engaged in an honorable business, and made no advances to or practiced any deception on Mr. Cobey. In addition to being an elderly retired business man, Mr. Cobey was without family or relatives and by his own statement no one "gave a damn for him." His attentions to Miss Gruber were voluntary, the purchase of the lot was his idea, the present of the $3000 to Miss Gruber was his idea, and in fact the whole plan to acquire the lot and build the house originated in his brain without any suggestion from Miss Gruber. All their contacts took place in her shop, at lunch, or on drives about the city with a chaperone. Common

courtesy brewed in Miami sunshine is the only instrumentality she is shown to have employed. Simple voluntary kindness always returns the best dividends and often they are in the intangibles that the tax gatherer cannot seize. In this case, it worked both ways. It returned to Miss Gruber another means of livelihood and it gave Mr. Cobey a new light on human kind. He responded in tangibles.

Mr. Cobey had been calling on Miss Gruber for a year when he purchased the lot and it was six months later when he conveyed it to her and gave her the check for $3000 so it was not a jumped up over-night affair. The error in the deed was purely clerical but was not revealed until after Mr. Cobey's infirmity developed. The house was to be of five rooms and four baths. When Mr. Cobey delivered the deed and the check to Miss Gruber, the gift was completed on his part. Miss Gruber was to look after the construction of the house but that was intercepted by this litigation and the error in the deed.

There is no law in this country to prohibit a man of sound mind from making a gift of what he has for a lawful purpose to any person of his choosing. There is no better consideration for a gift than gratitude. Mr. Cobey was unhappy where he was living but found happiness and tranquility in Miss Gruber's society. "Tranquility is the old man's milk," said Thomas Jefferson. No other consideration actuated the gift in question. True, the donor was to have a room in the house and care from the donee who stands ready to meet this condition. The law is settled that a gift inter vivos, if completed, cannot be overthrown by their heirs or representatives of the donor, except for fraud and undue influence. 24 American Jurisprudence 755, 758. Death or mental incapacity following the gift is not material. Reaves v. Pierce, 325 Mo. 293, 26 S.W. (2nd) 611; Harrigan v. Harrigan, 135 Cal. 397, 67 Pac. 506. No heirs or others directly interested are here complaining.

The cynic and the penny pincher who live within themselves look askance at such acts of benevolence, but there is no more natural way for a retired old man bereft of family and relatives and without a congenial place to lay his head,

to dispense his substance than was done by Mr. Cobey. Our social structure is literally strewn with such acts of benevolence. One benefactor will send a boy or girl through college. Another will provide for a faithful servant, another will set up an employee in business, others will endow hospitals, colleges, churches, and charities. Others will set up foundations for educational, religious, and benevolent purposes and in hundreds of particular cases men and women have contributed their substance to persons and causes that met their fancy. We have a distinguished judge in Florida who sets aside a modest sum each year to do a kindness to someone from whom he expects nothing in return. These examples of voluntary leveling, uninduced by the dollar mark are the best evidence yet that America is sound at the heart despite the rotten spots constantly discovered on the surface.

In her counter claim Miss Gruber prays that the description in the deed be corrected. She alleges that it was executed voluntarily by Mr. Cobey when he was in possession of his faculties, that the error was made in describing the lot, and was purely an inadvertance. From the record, there is not the slightest doubt that Mr. Cobey intended to convey Lot 15 instead of Lot 14. The curator may under Section 746.07, Florida Statutes of 1941, be required to correct the description. It is his duty to carry out agreements made by his ward in good faith.

The judgment is reversed with directions to the chancellor to dismiss the bill of complaint and to grant appellant the relief she prays for in her counter claim.

Reversed with directions.

BUFORD, C. J., CHAPMAN and ADAMS, JJ., concur.