44 So.2d 427 (1950)
SIEGEL et al.
v.
ADAMS et al.
Supreme Court of Florida, en Banc.
February 7, 1950.
Rehearing Denied March 7, 1950.
Ward & Ward, Miami, for Appellants.
Knight, Underwood & Cullen, W.E. Walsh and E.P. Ellis, Miami, for Appellees.
TERRELL, Justice.
This appeal is from a final decree removing zoning regulations from a highly restricted residential area in what is locally known as Belle Isle, Miami Beach, Florida. The area was originally zoned for exclusive estates and the lands of appellants were purchased and have been used for that purpose but they are located in one of the most rapidly developing areas in this county.
The decree appealed from is grounded on the theory that the physical character and condition of appellants' lands has been so changed by the encroachment of industrial plants, apartment houses, tourist courts and other commercial developments that *428 they are no longer suitable for the purpose originally planned, with parks and highways dedicated to the use of the owners and their successors in title. The record has been carefully considered and we find ample support for the chancellor's decree.
Zoning restrictions, like other phases of the law, are subject to removal or change when the reason for them or the circumstances that prompted them ceases. When they become obsolete or run afoul the public welfare would seem to be a good test to prompt the time for change or removal. The public welfare is a concept that broadens with changing times and circumstances and it now embraces many species of regulations that the courts of yesterday would not have brought within its range. There must be a positive showing of physical, economic or social change rather than esthetic or group caprice to justify the release of zoning regulations. Neither will they be released at the behest of community or group pressure, if in doing so constitutional guaranties are undermined.
The chancellor's decree does not offend this rule. The general subject growing out of circumstances similar to those in this case was covered in Osius v. Barton, 109 Fla. 556, 147 So. 862, 88 A.L.R. 394; Forde v. City of Miami Beach, 146 Fla. 676, 1 So.2d 642; Barton v. Moline Properties, 121 Fla. 683, 164 So. 551, 103 A.L.R. 725. The judgment apealed from is affirmed on authority of these cases.
Affirmed.
CHAPMAN and HOBSON, JJ., and BARNS, Associate Justice, concur.
ADAMS, C.J., and THOMAS and SEBRING, JJ., dissent.
THOMAS, Justice (dissenting).
Belle Isle, circular in form, is situated in Biscayne Bay a few hundred feet from Miami Beach proper. It is so divided by Venetian Way that about one-third of the land lies north of that street and two-thirds south of it. Adjoining the street on the south, and approximately in the center of the island, is a city park slightly over one hundred feet in width, north and south, and two hundred fifty feet in length, east and west. Extending from the street bordering on this park to the water are elongated lots. All lots south of Venetian Way and fifteen lots north of it, contained in a fanshaped area from the north line of Venetian Way at the west side of the island to a line running north and south east of the center, were originally platted and sold by a real estate company to various purchasers, and all of the deeds contained uniform restrictions and limitations, including one that houses erected on the properties should be confined to single family purposes.
The island was originally developed in 1915, and in 1939 the City of Miami Beach, within the boundaries of which the island is located, ordained that property north of Venetian Way could be used for purposes other than single family residences, while property south of that street was restricted to single family residences.
In the present litigation the plaintiffs sought and obtained a final decree holding that the property south of Venetian Way should no longer be affected by the restrictions contained in the original deeds or the inhibitions of the ordinance. The basis of the attack was, in general, that the character of the property in the vicinity had so changed that the restrictions now constituted a detriment to the property owners instead of a benefit and that they were a cloud upon the titles of the owners of the lots.
Specifically, it was urged that the desirability of the property for residential purposes was weakened by the increased vehicular traffic on Venetian Way between Miami and Miami Beach, by the construction resulting from placing the area north of Venetian Way in a different classification, by the building on some of the lots in the area north of the street of more than one house, by the erection on the eastern part of the territory north of the road of four large apartment houses. It should be pointed out here that the land on which these apartment houses were constructed was not a part of the area affected by the covenants in the original deeds.
Voluminous testimony was heard by the master, and it is obvious from his report *429 that he not only listened carefully but digested meticulously what the witness stated, his exhaustive report being thorough, interesting, and instructive. I find no fault whatever with his findings as to the actual physical situation, both on the island and on the mainland a few hundred feet away. I do find myself differing with him and the chancellor on the application of relevant law in the light of those facts.
As has been seen, there are really two phases of the controversy  one dealing with the zoning ordinance and one with the covenants in the deeds. So far as the former is concerned, I think there is no illogic in holding that the boundary between the north one-third of the island and the south two-thirds formed by Venetian Way is a proper division line. The allowance of multiple family houses on the north side of this street in the original subdivision and the construction of apartments on the adjacent territory north of the street, but not in the original subdivision, have not rendered the ordinance so unreasonable, as it presently affects the south two-thirds of the island, that the court is warranted in holding it invalid.
Nor should the development of the property along the shore of the mainland by the construction of buildings suitable for various business enterprises influence a decision in this case. A natural boundary, several hundred feet of water, separates this island from the mainland. The fact that the shore line of the land on which the principal part of the city is located has eventually developed into an industrial area would not, in my opinion, be just reason to hold that the character of an island in the bay, originally intended as a location for residences and at least two-thirds of which is still devoted to that purpose, should be now converted into a site for multiple family buildings.
We have held that there must be a line of demarkation somewhere to separate zoning districts, and in some instances such a boundary may have the appearance of arbitrariness. Venetian Way, on the south, and an expanse of water several hundred feet in width, on the east, are certainly boundaries as reasonable as imaginary lines.
I do not subscribe to the thinking that eventual monetary gain to complaining property holders is a determining factor in a controversy involving the propriety of zoning restrictions because, patently, in many like situations the individual might prosper by breaking down the restrictions, while the community as a whole might suffer.
On many occasions we have discussed these elements, and it does not seem necessary to repeat them here. We have said that we shall not substitute our judgment for that of the governing body of the municipality and that we shall be concerned only if the use of the property of a protestant is so inhibited that the enforcement of the zoning ordinance will amount to a violation of the constitutional guarantee that his property may not be taken without due process of law. In the present instance it seems to me that one who is resisting the change of the ordinance could argue more forcefully that his constitutional guarantee would be invaded, when it is considered that all who originally purchased on the island understood that the lots would be used for one purpose and one purpose only. Nor am I impressed by the suggestion that so many wish the change, while so few resist it, for the constitutional guarantee to one property owner may not be affected by a contrary opinion of his neighbors, no matter how far they may outnumber him.
Having the views here expressed concerning the change in the character of the island I, of course, arrive at the same conclusion with reference to the restrictions in the deeds  that is, that there has not been shown such a mutation in part of the neighborhood contained on the island as to demonstrate that the restrictions have run a reasonable length of time and therefore should be removed as clouds upon titles. See Barton v. Moline Properties, 121 Fla. 683, 164 So. 551, 103 A.L.R. 725.
For the reasons given, I dissent.
ADAMS, C.J., and SEBRING, J., concur.