ALLEN, Chief Judge.
This is an appeal by the plaintiff from a decree which granted specific performance of a portion only of the property described in the option which had been executed by the defendant to the plaintiff. The reformation of the option was based upon the alleged partial incompetency of the defendant due to a claimed attack of diabetes at the time the defendant signed the agreement.
In August, 1951, the defendant leased a portion of his land, 100 feet by 300 feet, to the plaintiff for 3 years at a rental of $10 per month. The defendant gave the plaintiff oral permission to use additional land belonging to defendant if the plaintiff would clear the land. In 1954, prior to the termination of the first lease, the parties entered into the agreement which is the subject matter of this suit. The 1954 lease was to cover a piece of land 200 feet by 300 feet for 3 years at a rental of $20 per month. Also included in this lease was a 3 year option to plaintiff to purchase all of the land owned by defendant at a price of $10,000. On April 30, 1957, plaintiff exercised his option to purchase and tendered $9,280 to defendant. ($10,000 less the rental credits pursuant to the terms of the option.) The defendant refused the option and this suit ensued.
The defendant, E. L. Harden, testified that he executed the first lease; that on the date the second lease and option was executed he was not feeling well due to his diabetic condition; that his daughter drove him to plaintiff’s lawyer’s office to sign the instrument in question; that he went into the office and the lease was read to him but he did not read the lease himself; that he began to feel ill and he signed the instrument and left; that he walked a block or so to his son-in-law’s business place; and that his daughter took him immediately to get some orange juice and sugar to counteract the insulin shock. The defendant also stated that he does not remember what he says while suffering an insulin shock.
Nellie Gertrude Harden Hummel, the defendant’s daughter, testified in support of the defendant’s account of being ill on the date in question after leaving the office; that she took the defendant to get some orange juice to counter-attack the diabetic condition; and that the defendant had lost a leg as a result of his diabetic condition.
*628 Keith Hummel, the son-in-law of defendant, testified that defendant was in an insulin shock on the date in question after leaving the plaintiff’s lawyer’s office; and that his wife, the defendant’s daughter, took her father to get some orange juice.
The plaintiff’s lawyer and his secretary testified that the lease was prepared in their office; that it was read to defendant since defendant was not represented by counsel; and that they explained to defendant that the lease and option covered the entire parcel of land.
From the foregoing narration of the testimony adduced it is noted that no medical testimony as to the defendant’s physical condition or past medical history was presented. The only testimony in the record relating to. the defendant’s lack of competency to execute the lease-option agreement is by the defendant himself and by his daughter and son-in-law with whom the defendant resided. The testimony by the daughter and her husband relates to their observance of defendant’s physical condition after he left the plaintiff’s lawyer’s office.
The defendant stated that he did not make known to the plaintiff’s attorney or to the secretary or anyone else in the office that he was ill at the time he executed the agreement. Thus, we have before us only lay testimony of defendant and his daughter and son-in-law that defendant suffered an “insulin shock” after executing the agreement.
The instant case does not involve a condition of permanent disability or incapacity, but to the contrary, concerns a temporary condition of alleged lapse of mental awareness. Mere mental weakness will not authorize a court of equity to set aside a deed if it does not amount to inability to comprehend the effect and nature of the transaction and is not accompanied by evidence of imposition or undue influence. Travis, et al. v. Travis, 81 Fla. 309, 87 So. 762. The burden rests on those seeking to set aside a deed on the ground of incapacity of the grantor at the time the instrument was executed. See Wise v. Wise, et al. 134 Fla. 553, 184 So. 91; Godwin’s Heirs v. Godwin, 92 Fla. 937, 111 So. 240. For it is the capacity of the grantor at the time the deed is executed and delivered that is controlling and his subsequent incapacity will not affect the deed. Gruber v. Cobey, 152 Fla. 591, 12 So.2d 461; 10 Fla.Jur. Deeds, § 49.
In Davis v. Wigfall, et al. Fla.1954, 70 So.2d 908, 909, the grantor in seeking to set aside a deed on the ground of incompetency at the time of executing the deed alleged that she was eighty five years old at the time and was bedfast; that she had suffered a ringing sensation in her ears for the preceding two and one-half years, a feeling of dizziness, and did not regain full use of her faculties until two years after executing the deed; and that she then determined that various transactions had taken place during her illness while she was in such condition. The chancellor denied the requested relief after hearing testimony on the issues presented and the Supreme Court stated in affirming:
“We have carefully read all the testimony in the case and have reached the firm belief that the appellant wholly failed to prove that at the time of the execution of the deed conveying the property in question to Elizabeth R. Wigfall the grantor lacked the mentality to understand the nature and effect of the instrument. Travis v. Travis, 81 Fla. 309, 87 So. 762 * *.”
Alluding once again to defendant’s testimony in the instant case, we note that although he claims to not remember the details surrounding the execution of the instrument, he did remember signing a legal document; that the lessee-optionee had not signed the document at that time; and that there were witnesses to the transaction. The defendant also contends that he was never given a copy of the docu *629 ment and was unaware of the option portion of the lease but did remember reading the first paragraph.
The plaintiff’s attorney’s secretary, Mrs. Dillon, testified that she read the agreement in its entirety to the defendant; that the attorney asked the defendant if he understood that it was a lease on part of the land with an option to buy the entire parcel for $10,000, and that the defendant answered yes, that is what he had agreed to do. The plaintiff’s attorney, Errol S. Willes, testified that the defendant was given a copy of the executed lease option agreement.
The agreement was executed on July 29, 1954, and the plaintiff gave notice and made a tender in exercise of the option on April 30, 1957. During this period the defendant did nothing to disaffirm the instrument. In view of the fact that defendant admits he signed some document on July 29, 1954, and that he claims only temporary inability to remember the details, it would appear only reasonable to expect the defendant to have investigated the transaction upon regaining his alleged momentary lapse of mental awareness. During oral argument before this court Judge Shannon inquired of counsel if the instrument in question had been recorded. Neither counsel for appellant nor for ap-pellee was certain. We have since received information from counsel for appellant that the instrument was recorded on July 29, 1954, the same date that it was executed. Thus, for a period of over two and one-half years the defendant accepted the increased rent under the agreement but did nothing to ascertain the terms of the agreement notwithstanding the fact that the lease-option had been a matter of public record throughout this period of time.
After a careful review of the record, briefs and oral argument, we must conclude that the defendant has failed to sustain his burden of proving lack of competency at the time the instrument was executed. Although the instant record contains no medical testimony we are aware of the potentially disabling qualities of diabetes. Dr. Gray states in his Attorneys’ Textbook of Medicine, at § 180.33 that the diabetic should observe regular hours of eating and in § 99.12 he states:
“Diabetics who do not have other disease and are not taking excessive amounts of insulin have normal brain activity as disclosed by the electroencephalograph. That is true after many years of this disease even though insulin has long been used. Should diabetes become severe with destructive lesions that not infrequently involve the brain, abnormal electroencephalographic records appear. These are not characteristic, their variety depending upon the location and extent of brain damage.”
The instant record discloses that defendant recovers from his brief attacks by sipping some orange juice and that he did not submit to medical treatment on the date in question. Although he had been attended by his personal physician over a period of years, there is no testimony by the physician as to the severity or degree of the defendant’s diabetic condition. Mere mental weakness will not authorize setting aside a deed for the presumption always supports the validity of the deed and the sanity of the grantor Until overcome by a preponderance of the evidence. The instrument should not be voided unless proven that the mind of the grantor was so affected as to render him incapable of comprehending the nature and effect of the transaction. Tyler v. Tyler, Fla.App. 1959, 108 So.2d 312; Hassey v. Williams, 127 Fla. 734, 174 So. 9; Lamson v. Martin, Fla.App.1958, 104 So.2d 117.
In light of the record presented, it was error to reform the instrument and grant specific performance of a portion only of the land described in the option. This cause must therefore be reversed for *630 further proceedings not inconsistent with the views set forth herein.
Reversed.
SHANNON, J., and HENSLEY, ROBERT, E., Associate Judge, concur.