LETTS, Judge.
The grantee named in an eleven year old executed and recorded warranty deed, here appeals a trial court decision to cancel and nullify the conveyance. We reverse.
Other than the fact that the daughter took her mother to a lawyer’s office, there is no evidence in the record to sustain the trial judge’s finding that the appellant/daughter exerted undue influence over her mother when the latter deeded her house to the former in 1966, retaining possession by means of a life estate set forth therein.
We have read the testimony carefully and, although the direct and cross-examination of the mother, at trial, reads like one of the double talk routines made famous by Abbott & Costello, even she (the mother) makes no such allegation. The total of her testimony is that she was in a state of shock over the death of her husband, trusted the grantee/daughter, and didn’t bother to read the instrument she signed in her lawyer’s office, with the daughter absent from the room, because she thought it was a will leaving everything to all three daughters.[1] None of this testimony even attempts to prove undue influence exercised by the daughter named as grantee in the deed, nor is it sufficiently alleged in the Complaint.
By contrast, the daughter thus preferred, the lawyer (who was the mother’s choice) and a neighbor, all three testified without contradiction (other than the mother’s) that the mother knew full well she had deeded the property to the preferred daughter. The testimony of the neighbor, for example, is illuminating.
Q Okay. Did you have any conversations with Mrs. Neville on any of those occasions with respect to financial problems and/or the house?
A Except one thing, that she made the remark to me.
Q Who is “she”?
A Mrs. Neville told me in front of her daughter that she is the only one who helped.
Q Who is the only one that helped?
A Frances Severi, that helped with the bills and she made the statement that is why she put the deed in her name. This is what she told me.
Q Who told you that, ma’am?
A Mrs. Neville, in front of her daughter.
Q Told you what? I am sorry. I didn’t understand you.
A She said that only Frances deserves anything because she is the only one who helped her mother and put the deed on her name, Frances’.
Q Mrs. Neville put the deed into Frances’ name?
A Yes.
Q Okay. Was that sometime during the year 1966?
A That is right.
Q Okay. Did you happen to have a conversation with Mrs. Neville, say, approximately five years later, around 1971, in connection with the house or about the house?
A Well, in 1971, I do remember some trouble started at the house and I do remember one thing she said, that she will give $10,000.00 to her daughter after her death, if, you know, she signs the house back to her. That is all I know—
The foregoing testimony, substantiated by the lawyer and the preferred daughter, also negates the trial judge’s *788 finding of no consideration. Love and filial affection is sufficient consideration in and of itself, (10 Fla. Jr. 104 citing cases) never mind all the. hotly disputed reasons as to why the preferred daughter paid the mortgage on this property for 8 years, paid off another loan on it and made capital improvements.
Lastly, even the appellee in her brief, admits that the trial judge made no finding of mental incompetence at the time the deed was executed. The ruling of the trial judge, speaks only of “a state of mental weakness” and inability to “understand the irrevocable nature of her act.” There is no recorded case that we can find which supports the proposition that a grantor may cancel a deed, because he or she was not aware of the inability to later demand a reconveyance. As was said in Parks v. Harden, 130 So.2d 626 (Fla. 2nd DCA 1961), citing from the Supreme Court in Travis v. Travis, 81 Fla. 309, 87 So. 762 (1921),
The instant case does not involve a condition of permanent disability or incapacity, but to the contrary, concerns a temporary condition of alleged lapse of mental awareness. Mere mental weakness will not authorize a court of equity to set aside a deed if it does not amount to inability to comprehend the effect and nature of the transaction AND IS NOT ACCOMPANIED BY EVIDENCE OF IMPOSITION OR UNDUE INFLUENCE. (emphasis, supplied) page 628.
This quote is most pertinent to the case now before us. There is no evidence of undue influence and no medical evidence as to the 1966 state of mind of the mother. Instead there is only her own testimony as to temporary inability to comprehend the nature of this particular conveyance because of her grief at the death of her husband three months before. Such is entirely insufficient even if unrebutted, never mind the fact that the lawyer’s testimony directly contradicts it, as does the neighbor’s and the preferred daughter’s.
There is most persuasive testimony to demonstrate that this case involves a mother who, with some urging from the other two children, years later, changed her mind and wanted the fee title to the house back. (She even offered $10,000 for it). We are not unsympathetic to her desire, but find no law in the realm of real estate conveyancing to support such Indian giving.
REVERSED AND REMANDED WITH INSTRUCTIONS TO VACATE JUDGMENT AND REINSTATE DEED.
DOWNEY, C. J., concurs.
CROSS, J., dissents without opinion.

. However, she also signed a will, as well as a deed, on that same visit to the lawyer.