387 So.2d 999 (1980)
Sarkis ACOPIAN and Bobbye Acopian, Appellants,
v.
James A. HALEY, George L. Williams and Michael D. Bodne, Appellees.
No. 79-381/T4-414.
District Court of Appeal of Florida, Fifth District.
September 3, 1980.
Rehearing Denied September 25, 1980.
*1000 Sam Daniels of Daniels & Hicks, Miami, and Ralph Geilich of Williams & Geilich, Melbourne, for appellants.
Edward J. Richardson of Saxon & Richardson, P.A., Melbourne, for appellees.
ORFINGER, Judge.
Appellees became owners in 1970 of four lots in a fourteen lot ocean-front subdivision. The deed to their predecessor in title, recorded in 1944, contained the following restrictive covenant:
Lots 24 to 37 inclusive of this subdivision are restricted as follows: One dwelling, which may be a duplex, with a garage to each lot. The garage may be a garage apartment. Dwelling to cost a minimum $1500.00. Building to be placed at least fifteen feet back from the North, South and West lines. No building to be placed nearer the Ocean than 210 feet from the West line of the lot. All lots in this addition are restricted to residential use only.
Appellees' deed was made subject to these restrictions.
In 1978, desiring to build a 44-unit condominium project on these four lots, appellees filed this action for declaratory judgment, naming the owners of the remaining lots as defendants, and seeking a declaration that the restrictive covenants were no longer valid. Appellants contested the action. Of the remaining defendants, one filed an answer consenting to the removal of the restriction and the others did not appear.
The evidence at trial reflects and the trial court found, that of the fourteen ocean-front lots in the subdivision, eight were *1001 vacant and unimproved (appellees' lots included) and six had residences constructed thereon. Of the latter, one residence was apparently being used also as a real estate office without objection by the residents. Appellants' lot was located immediately adjacent to the proposed condominium project. The court found from the evidence that appellants had a substantial home on their property and that the proposed condominium project would not depreciate their property; that appellees' property, consisting of approximately 400 feet of frontage, was worth considerably more than the investment cost if the restrictions were valid, and would have an even higher value if the restrictions were invalid. The court further found that there had been material changes in the character of the neighborhood in other adjacent subdivisions, that the zoning of the subject subdivision had been changed to medium density residential which would permit the proposed condominium project; that the subject subdivision was suitable for construction of one or two-family residential units but "the highest and best use of Lots 24-27 would be for medium density residential as zoned ..." The court concluded that "the past and continuing changes in the area of this property since imposition of the restrictions (and even since plaintiffs obtained title) render the continued enforcement of the restrictions inequitable and they should be removed."
Appellants contend that the trial court erred in considering changes in the character of the neighborhood prior to the time appellees acquired their property and that it applied the wrong rule of law in determining that the restrictions were no longer valid. We agree and we reverse.
With respect to appellants' contention that the court erred in relying on changes in the neighborhood which occurred prior to appellees' ownership of the property, it is clear that he did. The case law seems to say that the court cannot consider changes which occur prior to the acquisition of title by one who seeks to remove the restrictions. Allen v. Avondale Co., 136 Fla. 6, 185 So. 137 (1938).[1] However, many of the changes in the surrounding neighborhood occurred after appellees acquired title, so any error in considering prior changes is harmless.
Where no termination date is specified, the test for determining the continued validity of restrictive covenants in the face of a challenge is whether or not the original purpose and intention of the parties to such covenant can be reasonably carried out, in the light of alleged material changes which are claimed to have effectually frustrated their object without fault or neglect on the part of the one who seeks to be relieved of their observance. Barton v. Moline Properties, Inc., 121 Fla. 683, 164 So. 551 (1935). It is said that this doctrine rests on the principle of contract law known as discharge of contractual obligation by frustration of contractual object. Osius v. Barton, 109 Fla. 556, 147 So. 862 (1933); 88 A.L.R. 394.
Changes take place in Florida every day, and if mere change in neighborhoods alone was sufficient to invalidate restrictive covenants, none would remain. However, not only must there be a showing of material change in the character of the neighborhood of the subject land, the changes must be such as materially affect the restricted land and frustrate the object of the restrictions. Allen v. Avondale Co., supra. Where the restriction is for the benefit of and is still of substantial value to the dominant lot, notwithstanding the changed condition of the neighborhood in which the lot is situated, a court of equity will restrain its violation. Barton v. Moline Properties, Inc., supra.
There is no showing or finding by the court that the many changes in the *1002 character of the surrounding neighborhood had materially affected the subject subdivision or frustrated the purpose of the restrictions. All the changes had taken place in other subdivisions. All of the lots in the subject subdivision which are improved have residences on them. The one residence also used as a real estate office at the southern end of the tier of oceanfront lots does not appear to be such a substantial violation as to authorize the cancellation of the restrictions. The evidence clearly shows that appellees' lots are worth considerably more now than they were when purchased in 1970, even as restricted, and the trial court properly found that the lots are very well suited to the restricted uses. Any adverse effect on the property resulting from changes in the character of other lands outside the subdivision is clearly not shown,[2] nor is there any change in the subject subdivision itself.
We recognize the principle that an appellate court should not substitute its judgment for that of the trier of fact who sees and hears the witnesses, and we have not disagreed with or altered any of his findings. We do, however, have the obligation to correct an erroneous application of those findings to the law as it exists. The trial court found that the highest and best use of appellees' property would be the proposed condominium use, but while this may be a good test in other situations, it is not the correct test in determining continued validity of restrictive covenants. Zoning changes are not conclusive of changed conditions, but are merely evidence to be considered along with other evidence to determine whether or not the changed conditions are such as to make ineffective the original purpose of the restrictions. Wahrendorff v. Moore, 93 So.2d 720 (Fla. 1957). There was no finding below that the changed conditions in the neighborhood made ineffective the original purposes of the restrictions or that the affected land would suffer adversely if the restrictions were not cancelled. Conversely, the evidence and the court's findings clearly show that the land can be and is effectively being used for the restricted purposes and that it has increased in value as restricted.
The final judgment is reversed and this cause is remanded for entry of judgment for appellants.
REVERSED and REMANDED.
COBB and SHARP, JJ., concur.
NOTES
[1] The logic of this and similar holdings has been questioned because the focal point in the determination should be whether the intent of the original parties and their purpose in restricting the land have been frustrated by a change in conditions, not who owns the parcel sought to be relieved of the restrictions at the time the action for removal is filed. § 11.12, Florida Real Property Practice III, The Florida Bar, C.L.E. (2d Ed. 1976).
[2] We agree with the statement by Justice Brown in the concurring opinion in Allen v. Avondale Co., 136 Fla. 6, 185 So. 137 (1938): "As to the changes wholly outside of the restricted area, these will not authorize a court of equity to cancel or refuse to enforce the covenants, unless the influence of the changes upon the restricted area are such as to clearly neutralize the benefits of the restrictions to the point of defeating the objects and purposes of the covenants... ."