464 So.2d 1168 (1985)
Tom WOOD and Peggy Wood, Husband and Wife, Petitioners,
v.
Raymond G. DOZIER, Jr., and Carolyn S. Dozier, Husband and Wife, Respondents.
No. 63879.
Supreme Court of Florida.
January 10, 1985.
Rehearing Denied April 3, 1985.
William L. Gary and Howard E. Adams of Pennington, Wilkinson & Dunlap, Tallahassee, for petitioners.
James B. Fensom of Barron, Redding, Boggs, Hughes, Fite, Bassett & Fensom, Panama City, for respondents.
Hume F. Coleman and Michael L. Rosen of Holland & Knight, Tallahassee, on behalf of Elizabeth B. Fensom; Guy R. Newman and Wenona D. Newman, his wife; R.F. Robertson and Frances M. Robertson, his wife; Charles E. Ragan, Jr.; Donald B. Ramsey and Mrs. E.H. Ramsey, his wife; Edward J. Schwartz and Linda N. Schwartz, his wife; Norbut C. Schweikert and Lillian C. Schweikert, his wife; Mrs. Emmett Scott; W.A. Spruill; and J.M. Warren, Jr., amici curiae.
PER CURIAM.
This cause is before the Court on petition for review of the decision of the district court of appeal, reported as Dozier v. Wood, 431 So.2d 184 (Fla. 1st DCA 1983). Because the district court certified that its decision passed upon questions of great public importance, we have jurisdiction. Art. V, § 3(b)(4), Fla. Const.
Unit No. 3, Mexico Beach, a subdivision platted in 1948, was conveyed subject to restrictive covenants including the following:
All lots shown on this plat are restricted to residences. No house may be erected on any lot shown hereon at cost of less than Three Thousand dollars ($3,000.00). Only one (1) building may be erected on each lot, except a garage apartment may be placed on the rear of any lot.
In 1952, the Driftwood Motel, an eight-unit vacation lodge, was built on three lots on the beachfront side of U.S. Highway 98. The petitioners Tom and Peggy Wood purchased the motel in 1975. They added one apartment in 1976 and two in 1978 by building a second story addition. The respondents Raymond and Carolyn Dozier purchased two lots across the highway from *1169 the beach in 1976 and 1978 and constructed a building consisting of their residence and a separate apartment. In 1980 the Town of Mexico Beach adopted a zoning ordinance providing: "Wherever the requirements of this ordinance are at variance with the requirements of any other lawfully adopted rules, regulations, ordinances, deed restrictions, or covenants, the most restrictive or that imposing the higher standards, shall govern." Town of Mexico Beach Ordinance No. 96, § 13 (1980).
In 1981, the Woods purchased two lots adjacent to their motel, receiving a warranty deed subject to restrictive covenants of record. In November, 1981, and March, 1982, the Woods applied for and received building permits to construct fourteen rental units on the two lots. The plans apparently called for seven separate buildings with two units each in an arrangement known as "cluster housing." The expansion plans were in keeping with the zoning ordinance which had zoned the two lots commercial, but were not in keeping with the restrictive covenant.
After construction commenced on the additions, the Doziers filed suit to prevent the proposed use on the ground it was in violation of the deed restriction. The trial court entered a temporary injunction on March 25, 1982. The Woods answered on April 23, 1982, alleging as affirmative defenses changes in the character of the neighborhood, acquiescence, estoppel, ambiguity, restraint on alienation, and lack of a time limit on the covenant rendering it unenforceable. The trial judge entered his final order on May 24, 1982. The Court allowed the Woods to build two structures on each lot, more than allowed under the deed restrictions but far fewer than they had proposed. The Court's order was based on evidence that the existing land use had changed since the time of the imposition of the deed restrictions. The Doziers filed an appeal and the Woods cross appealed.
The district court of appeal reversed the trial court's partial invalidation of the deed restriction. The court held that under Allen v. Avondale Co., 135 Fla. 6, 185 So. 137 (1938), a purchaser cannot rely on violations of deed restrictions to support a claim for relief therefrom if the violations occurred prior to his taking title. The court noted that the Avondale rule had been criticized in Acopian v. Haley, 387 So.2d 999 (Fla. 5th DCA 1980), rev. denied, 392 So.2d 1375 (Fla. 1981) and Carlson v. Kantor, 391 So.2d 342 (Fla. 4th DCA 1980). The district court, upon denying the Woods's motion for rehearing, certified the following questions as being of great public importance:
I. Whether the principle of law announced in Allen v. Avondale Company, 135 Fla. 6, 185 So. 137 (Fla. 1938), holding that where the owner of property who seeks relief from the enforcement of restrictive covenants shall be denied the relief sought when he is on notice that all material changes in the neighborhood occurred prior to his purchase of the property, [sic] shall have continuing vitality?
II. If Question I is answered in the negative, whether the decisive issue is, as suggested in Acopian v. Haley, 387 So.2d 999 (Fla. 5th DCA 1980), whether the intent of the original grantors, in restricting the use of the land has been frustrated by subsequent changes regardless of when such changes occurred?
We answer the first question in the affirmative and therefore need not reach the second question.
In Allen v. Avondale Co., appellant purchased a lot subject to a restrictive covenant prohibiting the use of any land in the subdivision for any purpose other than residential. Despite the restrictive covenant the properties on three sides of appellant's lot were being used for commercial purposes. Appellant brought a suit to cancel and remove the restrictions on the ground that the neighborhood had completely changed. The suit was dismissed and this court affirmed, stating:
This Court has repeatedly held that change in the circumstances and the neighborhood materially affecting the lands will warrant the granting of relief from restrictive covenants such as are *1170 here brought in question. [Citations omitted.]
The Chancellor evidently took the position that notwithstanding the expiration of the effective period of the covenants January 1, 1940, Appellant was not entitled to the relief sought because the changes relied on had taken place before he acquired his title and all of them except the use of the residence on the adjoining lot as a florist shop, were in another subdivision though said subdivision was just across the street on the south and west of Appellant's lot.
As against the holding of the Chancellor, we cannot say that error was committed. The changes shown to have taken place would ordinarily be sufficient to grant relief from enforcing the covenants but it is shown that all these changes took place before Appellant purchased his lot; he was therefore on notice of them and all but one were in another subdivision. At the present time, they only have about fourteen months to run.
135 Fla. at 8, 185 So. at 138. This holding that a property owner cannot rely on changes occurring in a neighborhood before his own acquisition of title in seeking to remove a deed restriction has been uniformly followed. See Carlson v. Kantor, 391 So.2d 342 (Fla. 4th DCA 1980); Acopian v. Haley, 387 So.2d 999 (Fla. 5th DCA 1980), rev. denied, 392 So.2d 1375 (Fla. 1981); Baker v. Field, 163 So.2d 42 (Fla. 2d DCA 1964). Contrary to the district court's assertion, Carlson and Acopian did not criticize the Court's holding in Avondale, but rather merely noted that it had been criticized.
We find no reason for changing this well established principle of law. Persons who purchase property subject to restrictive covenants cannot expect to have the covenants invalidated simply because the covenants have been previously violated and not enforced against others. Where a purchaser of land intends to use it for a purpose not allowed by a restrictive covenant, he should seek to have the deed restriction removed before purchasing the property. Restrictive covenants serve a valid public purpose in enabling purchasers of property to control the development and use of property in the surrounding environment. The Avondale decision limits the extent to which restrictive covenants may be invalidated on the basis of changes in the neighborhood and therefore helps to effectuate the beneficial purposes of such restrictions.
In this case, the Woods' motel is the only major structure that was built in violation of the restrictive covenants. To allow them to expand the motel in further violation of the restrictive covenant would only open the door to even more violations, eventually resulting in the complete circumvention and abandonment of the restrictive covenants. We therefore approve the district court's decision.
It is so ordered.
ADKINS, OVERTON, ALDERMAN and EHRLICH, JJ., concur.
BOYD, C.J., dissents with an opinion with which McDONALD and SHAW, JJ., concur.
BOYD, Chief Justice, dissenting.
The majority opinion, by adhering to the Avondale rule, has perpetuated an anomaly that should have no place in the process of giving equitable relief from restrictive covenants pertaining to the use of real property. Because I find that the trial court's ruling achieved a fair and equitable accommodation of the various rights and interests involved in this case, I would quash the decision of the district court of appeal and direct affirmance of the trial court's judgment.
Deed restrictions provide an important and beneficial device by which individuals can control and order the environments in which they live and work. However, the law recognizes that changes in the circumstances affecting a neighborhood, including the violation of deed restrictions and the acquiescence of those with the power to prevent violations, can render the strict enforcement of the covenants inadvisable, *1171 oppressive, and unfair. The Avondale rule gives the benefit of changed circumstances and previous violations to an owner who held title while the changes and violations were taking place but denies equitable relief to one who purchases after the changes and violations have taken place. There is no basis in logic, reason, or fairness for this mechanical rule fashioned by this Court to deal with a situation vastly different from the situation in the present case.
As indicated above, under Avondale an owner of land restricted against, for example, commercial use, who sees that the exclusively residential character of his neighborhood has changed over the years, including violations of deed restrictions acquiesced in by the neighbors, might turn his land to commercial use knowing that he could raise the defense of laches against any attempt at enforcement by the neighbors. But a purchaser of the same owner's land would not stand in the owner's shoes with respect to the chances of getting equitable relief from the restriction. I believe that in all fairness the seller and buyer should stand on the same footing in this regard.
There are several major factors which distinguish this case from Avondale. In the first place, in Avondale the restriction was of limited duration, while in this case the original restrictions were placed on the land in perpetuity. Obviously, where a landowner seeks relief on the ground of changed circumstances, the fact that the restrictions are due to expire within a few years is a factor that alleviates the burden of being restricted as to the use of one's land. Furthermore, in Avondale the Court merely upheld the determination of the chancellor in a suit for equitable relief. The chancellor's reasoned judgment on the facts before him was merely given the proper deference. In the present case the chancellor arrived at a reasoned balancing of the equities involved, reaching a carefully constructed compromise, and the district court reversed, ordering strict compliance with the covenants in the face of undeniably altered conditions.
In the present case, it was clear that the character of the neighborhood had changed and that the residents of the subdivision had acquiesced in the various violations that had contributed to the altered pattern of development. The trial court did not simply declare the restrictions to be a nullity but granted relief from them to the extent of and in keeping with the nonconforming uses that had already been allowed in the subdivision. Thus he fashioned an equitable compromise that was fair to the landowner but would not contribute to an acceleration of commercialization of the neighborhood.
For the foregoing reasons, I respectfully dissent to the majority opinion of the Court and would direct affirmance of the circuit court's judgment.
McDONALD and SHAW, JJ., concur.