CASANUEVA, Judge.
Marco Island Civic Association, Inc., and a class of homeowners appeal from a final judgment declaring void certain deed restrictions on three lots owned by the-plaintiff, Dr. Luc Christian Mazzini. The deeds restrict the development of each lot to one detached single-family dwelling not to exceed two stories in height. The 'final judgment voiding the restrictions permits Dr. Mazzini to build a medical office building on the property. Because such restrictions cannot equitably be removed as long as the restriction is for the benefit of and remains of any substantial value to the dominant estate, we reverse.
In 1995, Dr. Mazzini acquired lots 7, 8, and 9 in Marco Beach Unit Three Subdivision of Collier County with the intention to construct a medical arts building. At that time the lots were bordered by an office building to the west and a day care center to the east. Dr. Mazzini’s property fronts on State Road 92. To the extent that they are developed, the lots to the rear are residential or adjoin residential properties. Unfortunately for Dr. Mazzini, even though the deeds put him on constructive notice of the restrictions, he did not actually become aware of the limitation on the type of building he was permitted to build until some time after the purchase. Once Dr. Mazzini learned of the restrictions, he instituted procedures to have the zoning applicable to his lots changed from residential to C-l, a type of zoning used to buffer residential districts from nearby commercial areas, and in 1998 the government rezoned his property. He then filed this action for declaratory relief, seeking to void the deed restrictions on the ground that the area surrounding his lots had become commercialized.
In support of his cause of action, Dr. Mazzini testified concerning the zoning re-designation as well as the physical changes that had occurred in the area since he bought his property. Since that time, a fire station had been constructed or had so expanded in size that it was often referred to as the “Taj Mahal.” A former bank building now houses both City Hall and the police station. Furthermore, within 150 yards of his property, Marco Hospital has doubled in size, and there exist plans for construction of an assisted care facility. The day care facility immediately to the east of his property has also undergone changes: the parking lot has been paved, an apron-type driveway has been added, and the center remains open as late as 11 p.m. Furthermore, although he did not *101 present any statistical or other evidence concerning traffic flow on State Road 92 at the time he purchased his lots, Dr. Mazzini did show the court a DVD depicting traffic at the time of the trial.
Several nearby homeowners testified in opposition to Dr. Mazzini’s action. They demonstrated that more residences had been built in the subdivision since Dr. Mazzini acquired his lots; thus, they concluded, the residential character of the subdivision had increased rather than decreased. Furthermore, despite the rezoning and other nearby commercial uses, these neighbors testified that their residences had increased in value. The owner of property located immediately to the rear of the existing medical center, however, testified that no one would buy his home for that reason, and a second medical building would further deter potential purchasers. -
The trial court weighed this evidence and made several findings. The court concluded that there had been many changes in the character of the surrounding neighborhood that materially affected the restricted land and frustrated the object of those restrictions. Dr. Mazzini’s lots, the court observed, are located at the edge of the subdivision on what is now a busy thoroughfare whereas the majority of the lots in Unit Three front interior residential streets. The court concluded that this was a unique situation, because Dr. Mazzini’s lots are situated between commercial properties on the outer fringe of the subdivision and face other medical and commercial activity.- Furthermore, Dr. Mazzini proposes to construct an attractive low-key medical building that would function as an intermediate buffer between more intense commercial activity and the residential areas. The trial court thus decided to cancel the restrictive covenants on Dr. Mazzini’s lots to the extent necessary to allow him to build and operate his medical arts building as proposed.
Any analysis of a trial court’s decision to cancel a restrictive covenant must begin with an examination of controlling precedent from the Florida Supreme Court. Seminal in this field is the 1938 case of Allen v. Avondale Co., 135 Fla. 6, 185 So. 137 (1938), in which the trial court was faced with determining whether a restrictive covenant requiring that the subject land be used only for residential purposes remained enforceable. The supreme court affirmed the chancellor’s decision that no relief from the restrictions was appropriate, noting that all of the changes to the property had taken place before the purchaser acquired the property, thereby putting him on notice of the nature of the area. Thus, although the Avondale court recognized the general rule that a “change in the circumstances ánd the neighborhood materially affecting the lands will warrant the granting of relief from restrictive covenants,” id. at 138, relief was inappropriate in that case.
The supreme court reaffirmed the vitality of the Avondale rule in Wood v. Dozier, 464 So.2d 1168 (Fla.1985). The First District had questioned the continued application of the Avondale holding and had certified the issue to the supreme court. See Dozier v. Wood, 431 So.2d 184 (Fla. 1st DCA 1983). In answering the First District’s concerns, the supreme court reiterated that a property owner clearly cannot rely on changes that took place before his or her acquisition of the property when seeking to remove a deed restriction. “Where a purchaser of land intends to use it for a purpose not allowed by a restrictive covenant, he should seek to have the deed restriction removed before purchasing the property.” Wood v. Dozier, 464 So.2d at 1170. Moreover, such restrictions “serve a valid public purpose *102 in enabling purchasers of property to control the development and use of property in the surrounding environment.” Id.
The issue of whether and when a change in the character of the neighborhood has occurred is a question of fact. Vetzel v. Broum, 86 So.2d 138, 140 (Fla. 1956). Because the trial court in this case weighed the evidence of changed circumstances and made factual findings in Dr. Mazzini’s favor, it would be inappropriate for this court to disturb those findings on appeal. However, the inquiry does not end with the determination that the character of the neighborhood has changed since Dr. Mazzini purchased his lots.
In addition to delineating factors that will not support removal of deed restrictions, the supreme court has also indicated, in the positive sense, what a property owner must demonstrate to void a deed restriction. The “test to be applied is whether or not the original intent of the parties to the restrictive covenants can be reasonably carried out or whether the changed conditions are such as to make ineffective the original purpose of the restrictions.” Wahrendorff v. Moore, 93 So.2d 720, 722 (Fla.1957). In Wahren-dorjf, as here, a property owner sought to void a restrictive covenant imposed by a plat that limited the use of the property to no more than a single residence. In its review of the evidence, the supreme court noted that the fact that the area had been rezoned, as here, was an admissible but not conclusive fact. In upholding the residential restriction, the court observed that the subdivision owners had purchased and built on their property in reliance upon the restriction. Although the impact of this case is to some extent limited because the holding turns on the court’s deference to the chancellor’s evaluation of the credibility of the evidence rather than upon its sufficiency or lack thereof, Wahrendorjf is nevertheless instructive because of its conclusion that voiding the restriction would result in a chain reaction. As the use of the properties changed, eventually their residential value would be lost. Id. at 723.
In AC Associates v. First National Bank, 453 So.2d 1121, 1127 (Fla. 2d DCA 1984), this court stated and applied the following rule:
[I]n an action to cancel a restrictive covenant^] the test is whether or not the covenant is valid on the basis that the intention of the parties can be carried out despite alleged materially changed conditions or, on the other hand, whether the covenant is invalid because changed conditions have frustrated the object of the covenant without fault or neglect on the part of the party who seeks to be relieved from the restrictions. See Barton v. Moline Properties, Inc., 121 Fla. 683, 164 So. 551 (1935). If a restriction on the servient estate was for the benefit of, and is still of substantial value to, the dominant estate, it will be enforced regardless of changed conditions. Barton, 164 So. at 557; Acopian v. Haley, 387 So.2d 999, 1001 (Fla. 5th DCA 1980).
Subsequently, in Essenson v. Polo Club Associates, 688 So.2d 981, 984 (Fla. 2d DCA 1997), this court held that the party seeking to be relieved of the deed restriction had failed to carry its burden of proof by showing that “the change occurred, (1) after the agreement, (2) without any fault on its part, and (3) that the change destroyed all value of the covenant,” in spite of the fact that the plaintiff demonstrated changed circumstances resulting from a rezoning affecting its property. To the extent that Essenson refers in its third element of proof to destruction of all value of the covenant as opposed to the AC Associates determination that the restriction must remain of substantial value, we *103 note the apparent conflict. However, in Essenson, the court observed that the “covenant continues to provide benefits,” thereby applying the correct standard. 688 So.2d at 984.
The equities are admittedly stacked against one seeking to void á restrictive covenant if he or she has purchased the property with actual or constructive notice' of its existence. In 1956, the supreme court observed in Vetzel, 86 So.2d at 140, that “[s]uch restrictions are favored’by our public polity today,” and we have’ uncovered no case law suggesting that our public policy is any different in 2004. It is apparent that the appropriate focus in cases such as this must be on the dominant rather than the servient estate. Although the highest and best use of Dr. Mazzini’s property might well be a medical arts building, that consideration, under the present state of the law, is of little consequence. Rather, Dr. Mazzini cannot legally prevail unless he presents evidence that the area has so changed in character from the time that he bought his property that construction of single-family homes on his lots would no longer be of substantial value to the subdivision.
Here, the evidence was legally insufficient for the trial court to conclude that enforcement of the deed restriction would no longer substantially benefit the subdivision as a whole. In a similar situation, the Fifth District held that evidence of a general increase in commercial traffic, a change of use of a warehouse to an office, and the graveling of a driveway fell “far short of a showing of material changes in the character of the neighborhood” that had occurred subsequent to the purchase of the property by the plaintiff. Lancaster v. Banks, 492 So.2d 464, 465 (Fla. 5th DCA 1986). More important, however, as in Lancaster, Dr. Mazzini presented no evidence establishing that the deed restrictions no longer confer substantial value on the dominant estate, and the trial court erred in cancelling the deed restrictions in the absence of such evidence.
Reversed and remanded for entry of judgment in favor of the defendants.
WHATLEY and WALLACE, JJ., concur.