# Supreme Court of Texas

No. 23-0365

EIS Development II, LLC,

*Petitioner*,

v.

Buena Vista Area Association, Lance W. Hall and Heather R. Hall, Jason Paul Smithey, David W. Molengraaf and Kimberley K. Molengraaf, Alexander E.W.J Schindler and Angela R. Schindler, as Individuals,

*Respondents*

On Petition for Review from the
Court of Appeals for the Eighth District of Texas

**Argued October 2, 2024**

JUSTICE BUSBY delivered the opinion of the Court, in which Justice Boyd, Justice Devine, Justice Bland, and Justice Sullivan joined, in which Chief Justice Blacklock joined as to Part I, and in which Justice Lehrmann, Justice Huddle, and Justice Young joined as to Parts II, III, and IV.

JUSTICE LEHRMANN filed an opinion dissenting in part, in which Justice Huddle and Justice Young joined.

A landowner recorded a plat that legally divided its property into seventy-three separate tracts, all but one of which are between one and two acres in size. A restriction in recorded deeds of the property to previous owners provides that "[n]o more than two residences may be built on any five acre tract." In this suit by neighbors to enforce the restriction, we are asked to decide how many residences may be built on these sub-five-acre tracts.

When essential principles of property law and textual interpretation are applied, the answer is straightforward. Given the critical role that notice plays in property law, we have held that restrictive covenants like this one will bind subsequent purchasers only if they use clear language to prohibit the specific land use being challenged. And the omitted-case canon of interpretation prohibits courts from adding to what the text states or reasonably implies in an effort to fill a judicially perceived gap or fully address a problem in the manner its drafters presumably would have wanted.

The language of this restriction limits density of residential development, not tract size. It does not expressly address tracts of fewer than five acres, and the only reasonable implication from its text is that two residences (or more) may not be built on such tracts. Thus, under our precedent, the restriction does not prevent the landowner from building one residence on each tract as planned.

Our dissenting colleagues decline to focus on the specific challenged use of the actual tracts; they harken back to earlier ninety-acre and ten-acre tracts that were originally burdened by the restriction and conclude as a matter of law that no more than forty

residences can be built in the entire area because it "can be divided" into twenty "distinct, non-overlapping [five-acre] tracts." *Post* at 7 (Lehrmann, J., dissenting).

But the drafters did not agree to a restriction on how the property can be divided, and it is not our role to create one. We conclude that the dissent's conception of the "intent of the original parties" is not a reasonable implication from the restriction's text. *Id.* at 4. Accordingly, we reverse the judgment awarding the neighbors declaratory and injunctive relief to halt the landowner's development. We also conclude that the jury was improperly instructed on the landowner's changed-conditions counterclaim and remand for a new trial on that claim.

## BACKGROUND

Between 1988 and 1993, the State of Texas acquired over 10,000 tracts of land in Ellis County for construction of the Superconducting Super Collider. After Congress defunded the project, the State tasked the Texas General Land Office with selling the tracts. The Land Office developed six "levels" of "covenants, conditions, and restrictions" (CCRs) that it could attach to various deeds.

In 1988, the State sold adjoining parcels of ninety acres and almost ten acres to David Lemon. The recorded deeds included a document titled "Level 5 Restrictions," which provides in relevant part:

> This conveyance is . . . made and accepted subject to the following CCR's:
>
> 1. No residential dwelling shall contain less than 2,200 square feet of floor space . . . . The residence shall be . . . used as a single family dwelling. No more than two

3

residences may be built on any five acre tract. A guest house or servants' quarters may be built behind a main residence location, but must be less than 900 square feet and of like construction as the main residence. Barns and outbuildings shall not be used for residential purposes.

2. The property is designated as residential, and shall be used for that purpose.

. . . .

11. The term of these CCR's are to run with the land and shall be binding on all persons in title to the tract, in whole or part for a period of twenty (20) years from the effective date of this deed, after which time they shall be renewed automatically for successive periods of ten years unless changed by agreement of 80% of adjoining property owners.

The CCR's set forth herein may be enforced by any adjoining landowners by action in the appropriate Court of Ellis County, but only after 30 days written notice of an alleged violation of these CCR's to the landowner.

In 2019, Lemon sold the parcels to Salvador Family Holdings without referencing or including these deed restrictions. Salvador Family Holdings later transferred the parcels to petitioner EIS Development II, LLC.

EIS began planning a large-lot residential development of the parcels called "Sunset Meadows," proposing seventy-three single-family residential lots—each lot over one acre, and all but one under two acres. The project lies within the extraterritorial jurisdiction (ETJ) of Waxahachie, Texas, less than a mile from the city limits.

George Salvador, EIS's owner, testified that he was not aware of the CCRs when he purchased the property and did not expect any such restrictions to apply. He was simultaneously developing another

4

subdivision less than a mile away. That property, too, was subject to the same CCRs and included smaller lots, but it had not been the subject of any efforts to enforce the CCRs. In his experience, one-acre lots were allowed under Waxahachie's and Ellis County's ETJ requirements.

In September 2020, the Planning & Zoning Commission of the City of Waxahachie approved the final plat of Sunset Meadows, with its seventy-three lots. Nearby landowners were notified about the proceeding as required. None objected to or appealed the plat's approval.

In November 2020, EIS submitted the plat to the Ellis County Commissioners' Court for consideration and approval. The thirty-day period for approval passed,[1] so the plat was approved by operation of law and the Commissioners' Court elected not to take any action. During the Commissioners' Court hearing, one adjoining landowner raised concerns about drainage and engineering. A non-adjoining landowner raised the CCRs as an obstacle to development, but no adjoining landowner objected on that basis.

Following approval of the plat, EIS began grading and excavating. As development proceeded, three adjoining landowners sought counsel and formed respondent Buena Vista Area Association to enforce the CCRs. Other adjoining landowners did not join the Association.

---

[1] *See* TEX. LOC. GOV'T CODE § 232.0025(d).

In December 2020, the Association sued EIS for declaratory and injunctive relief.[2] It sought declarations including that (1) "development of homes in the Platted Area in accordance with [EIS's] approved plat would violate the Deed Restrictions' requirement that no more than two residences . . . be built on a five acre tract" and (2) the restrictions "limit development in the Platted Area" to no more than forty residences, each two of which must be on a tract of at least five acres. The Association also sought an injunction against development in violation of the restrictions.

EIS responded with a plea in abatement, original answer, counterclaims, and a third-party petition. It challenged the Association's standing, sought abatement for joinder of affected parties, and raised defenses including waiver or abandonment, estoppel, and changed conditions. EIS also counterclaimed for a declaratory judgment that the deed restrictions are invalid and unenforceable due to waiver, abandonment, or changed conditions.

The Association moved for partial summary judgment, arguing it was entitled to a declaration that as a matter of law no more than forty residences can be built on the 100 acres subject to the restriction—two per five acres. It also sought summary judgment on EIS's defenses and counterclaims on both traditional and no-evidence grounds. The parties entered into a joint stipulation of facts in connection with the motion. EIS also responded with sworn affidavits, arguing that the evidence

---

[2] The Association initially sued Salvador Family Holdings and Lillian Custom Homes, LLC, but later amended its petition to substitute EIS as the defendant.

6

showed the restrictions were ambiguous and that there were fact issues on its defenses and counterclaims.

The trial court granted partial summary judgment for the Association, holding the CCRs "unambiguously limit development on the Property . . . to **no more than two main residences** per five-acre tract" and dismissing EIS's defenses and counterclaims except for changed conditions. A temporary injunction followed, restricting EIS from constructing more than forty main residences on the 100 acres with no more than two per five-acre tract.

The parties went to trial on EIS's changed-conditions defense and counterclaim, and the charge instructed the jury not to consider changes that occurred before Salvador Family Holdings acquired the parcels. The jury failed to find changed conditions.

The trial court signed a final judgment granting the Association declaratory and injunctive relief. The court declared that the deed restrictions are valid and enforceable and limit development to no more than two main residences and two guest houses per five-acre tract. It also concluded that "EIS's plan to develop 73 residential lots, each containing one main residence, on the Property . . . violates the Deed Restrictions applicable to the Property." The court permanently enjoined EIS from building more than two main residences and two guest houses per five-acre tract. It also awarded costs and attorneys' fees to the Association.

EIS appealed and the court of appeals affirmed. 690 S.W.3d 369, 379 (Tex. App.—El Paso 2023). The court held that abatement for joinder of other adjoining landowners or the State was unnecessary, the

7

deed restrictions unambiguously establish a density limitation of two main residences per five-acre tract, and EIS's defense of waiver or abandonment failed as a matter of law. *Id.* at 383, 387-88, 390, 394. As to changed conditions, the court held that the jury was properly instructed not to consider changes before Salvador Family Holdings acquired the parcels and that legally and factually sufficient evidence supported the jury's answer. This petition followed.

## ANALYSIS

EIS raises five issues in this Court: (1) whether nonparty adjoining landowners and the State are necessary parties to the Association's claims; (2) whether the deed restriction's meaning supports the award of declaratory and injunctive relief; (3) whether the Association waived or abandoned its right to enforce the restrictions; (4) whether the trial court erred by limiting the changed-conditions question to post-purchase changes; and (5) whether conditions have changed such that the restrictions are no longer enforceable.

On the second issue, we conclude that the restriction "[n]o more than two residences . . . on any five acre tract" does not prohibit EIS from placing one residence on each platted lot of fewer than five acres. The courts below therefore erred in awarding the Association declaratory and injunctive relief halting EIS's development, and we reverse the judgment in the Association's favor.

EIS's last three issues relate not only to EIS's defenses but also to its counterclaims. Because those counterclaims could afford EIS greater relief if successful, we also address EIS's third, fourth, and fifth issues, and we conclude that a new trial is required on the

8

changed-conditions counterclaim. Thus, EIS's first issue regarding joinder is likely to arise again, and we address that issue as well.

## I. Claim for declaratory and injunctive relief: meaning of the "no more than two residences" restriction

"[C]ovenants restricting the free use of property are not favored . . . because the right of individuals to use their own property as they wish remains one of the most fundamental rights that individual property owners possess." *Tarr v. Timberwood Park Owners Ass'n*, 556 S.W.3d 274, 280 (Tex. 2018) (cleaned up). When an owner parting with property seeks to limit its future use by others, "the language employed [must be] clear" and "furnish adequate notice . . . of the *specific* restriction sought to be enforced"; otherwise, one "who purchases [property] for value and without notice takes the land free from the restriction." *Davis v. Huey*, 620 S.W.2d 561, 565-66 (Tex. 1981) (emphasis added).[3] If "the objective intent of the drafters of the restrictive covenant as it is reflected in the language chosen" "unambiguously fail[s] to address the property use complained of," courts will not bar that use. *Tarr*, 556 S.W.3d at 280, 285.[4]

---

[3] *See also id.* at 567 ("[I]t is essential that the party seeking to enforce the restrictions on the use of land establish that the purchaser had notice of the limitations on his title.").

[4] The Legislature's direction to "construe[]" restrictions "liberally . . . to give effect to [their] purposes and intent," TEX. PROP. CODE § 202.003(a), is not to the contrary. A writing is ambiguous if it "is subject to two or more reasonable interpretations *after* applying the pertinent rules of construction." *Columbia Gas Transmission Corp. v. New Ulm Gas, Ltd.*, 940 S.W.2d 587, 589 (Tex. 1996) (emphasis added). Thus, this statute is one rule of construction that applies in deciding *whether* a restriction is ambiguous; it does not tell

9

Because deed restrictions are "subject to the general rules of contract construction," *id.* at 280, the omitted-case canon of textual interpretation helps courts understand the scope of a restriction and identify uses that fall outside that scope. The canon provides that "[n]othing is to be added to what the text states or reasonably implies . . . . That is, a matter not covered is to be treated as not covered." ANTONIN SCALIA & BRYAN A. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 93 (2012). We presume the drafters "chose the [text's] language with care, purposefully choosing each word, while purposefully omitting words not chosen." *In re CenterPoint Energy Hous. Elec., LLC*, 629 S.W.3d 149, 158–59 (Tex. 2021).

Judges "should not presume that every [text] answers every question, the answers to be discovered through interpretation" or "reconstruct[ion of] what [the drafters] would have wanted." SCALIA & GARNER, *supra*, at 93-94. Indeed, a perceived gap is simply "the space between what the [text] provides and what the gap-finding judge thinks it should have provided," so filling it would "ultimately come[] down to the assertion of an inherent judicial power to write the [text]." *Id.* at 95. "The traditional view" is that judges have no such power: "[t]he absent provision cannot be supplied by the courts." *Id.* at 94. Instead, "when [an author] prescribes in a fashion that courts regard as providing only 'in part' and not 'in full,' what remains is to be governed by preexisting law." *Id.* at 96. "[C]ourts will not rewrite [texts] to insert provisions parties could have included or to imply restraints for which they have

courts what to do once they have concluded the restriction is—or is not— ambiguous.

10

not bargained." *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996).

Applying these principles, we must determine whether a deed restriction providing that "[n]o more than two residences may be built on any five acre tract" prevents the specific land use being challenged: building one residence on one sub-five-acre tract. More specifically, the Association's petition asked the trial court to determine whether "development of homes in the Platted Area in accordance with the approved plat"—which shows one single-family residence on each of the seventy-three sub-five-acre tracts—"would violate" the deed restriction just quoted.[5] The answer is no.

The language of this restriction limits density of residential development, not tract size. But it was drafted as an incomplete density restriction: it does not expressly spell out the proper density for all sizes of tracts. Thus, the question becomes whether there is a reasonable implication from the text about how many residences an owner may build on a tract of fewer than five acres.

The parties and the dissent advance various readings of the restriction, but none are reasonable. For example, EIS is incorrect in reading the restriction to apply only to tracts of precisely five acres. This construction leaves no room for reasonable implications from the text,

---

[5] We are at a loss to understand the dissent's repeated accusation that our opinion is somehow hiding the ball: "ignor[ing]" the issue that the dissent contends has been the focus "throughout this litigation" in favor of an "irrelevant" and even "irrational" inquiry that somehow "charts [a new] path." *Post* at 1-4. To the contrary, we are simply addressing the question asked by the Association in its live pleading and answered by the trial court in its final judgment, which we have quoted above.

11

including that tracts smaller than five acres may be limited to fewer residences while tracts larger than five acres may have more. For the same reason, EIS is incorrect to suggest that the restriction applies only to tracts of five or more acres.

Similarly, the Association is incorrect in arguing that the restriction sets a minimum usable tract size of five acres so that no residential building can happen on any smaller tracts. Tract size and density of development on a tract are two distinct variables that affect land use,[6] and a restriction on one cannot necessarily be read as a restriction on the other. Here, the parties to the deed containing the density restriction did not bargain for or provide notice of a minimum-tract-size restriction, and we are not free to insert one.

For their part, our dissenting colleagues read the restriction as defining the number of residences that can be built "per five acres." *Post* at 6. The dissent shifts its focus from the challenged use of the actual platted tracts to the earlier parcels purchased from the State totaling 100 acres, explaining that no more than forty residences can be built in the entire area because it "can be divided" into twenty "distinct, non-overlapping [five-acre] tracts." *Id.* at 7. The dissent bases this conclusion on what it believes was the "intent of the original parties" who drafted the restriction, concluding any other interpretation would "functionally nullify the restriction." *Id.* at 4, 6.

This reading is unreasonable for several reasons. First, it rewrites the restriction to provide for up to two residences "per five

---

[6] *See* TEX. LOC. GOV'T CODE § 211.003(a)(4)-(5); *Powell v. City of Houston*, 628 S.W.3d 838, 850-51 (Tex. 2021).

acres" rather than "on any five acre tract." The words "any" and "tract" must be given meaning. The restrictions appear in the real property records as part of deeds conveying actual tracts of land that will bind record owners who are deeded those tracts in the future, so it is incorrect to read the restriction (as the dissent does) to focus on "indefinite" areas of "five non-overlapping acres" into which the original parcels "can be divided." *Id.* at 7. Instead, "tract" in the context of this particular restriction, as we read it, means "[a] specified parcel of land,"[7] so the recorded subdivision plat created seventy-three separate tracts.[8] The word "any," for its part, signals in this context that the tracts to which the restriction applies can change over time. And our cases cited above confirm that the recorded tracts of which the Association complains are the focus of the analysis, which was not frozen in place based on the sizes of earlier tracts. *E.g.*, *Tarr*, 556 S.W.3d at 285 (considering whether restrictive covenants "address the property use *complained of*" (emphasis added)).

Second, nothing in the text of the restriction supports an inference that the record owners of these separate sub-five-acre tracts cannot build any residences at all. The dissent's interpretation improperly writes in a minimum-acreage requirement for any residential use even though the parties did not bargain for one and the deed does not provide fair notice of one.

---

[7] *Tract*, BLACK'S LAW DICTIONARY (12th ed. 2024).

[8] *See* TEX. LOC. GOV'T CODE § 232.001(a) (providing that a subdivision plat "divides the tract into two or more parts").

13

The dissent prefers to address how EIS should hypothetically have platted the original parcels totaling 100 acres, and it characterizes our opinion as pursuing an irrelevant inquiry divorced from how the parties and lower courts handled this litigation. *Post* at 1-2. To the contrary, the Association has never argued that EIS's actual division of the parcels into tracts smaller than five acres, by itself, violated the restriction, nor could it. As discussed, the restriction's text does not prohibit subdivision and says nothing about minimum tract size. Instead, the Association's petition asked the trial court to decide whether "*development of homes* in the Platted Area in accordance with the approved plat" would violate the restriction (emphasis added). And the trial court did so, declaring in its final judgment that "EIS's plan to develop 73 residential lots, each containing one main residence, on the Property . . . violates the [restriction]." That is the issue before us.[9]

Having concluded that these various constructions of the restriction are not reasonable, we are left with the question whether the restriction is susceptible to any reasonable construction. We conclude it is. By providing for *no more than two* residences on any *five-acre* tract, the restriction rests on the assumption that *one* residence may be built on a five-acre tract. Because nothing suggests that the same assumption does not apply to tracts of fewer than five acres, and because nothing in the deed prohibits construction of one residence on any tract, the restriction implies that one residence may be built on a tract of any size.

---

[9] Whether the plat is subject to modification is irrelevant if development in accordance with the plat does not violate the restriction. Thus, we find it unnecessary to address the possible modification of the plat. *Cf. post* at 1-2, 4.

14

Neither the deed's text nor background law applicable in this area limit the number of residences on a tract. *See* TEX. LOC. GOV'T CODE § 212.003(a)(4).

We thus conclude it is reasonable to construe the restriction as assuming that one residence may be built on any tract while both permitting a *second* residence on a tract of at least five acres and prohibiting a *third* residence on such a tract. Because restrictions must be clear and implications must be reasonable, the restriction does not prevent the owner of a sub-five-acre tract from building one residence as allowed by law.

This reading eliminates the complexities that result from the unreasonable constructions the parties and dissent propose. And it avoids other anomalous results of the dissent's interpretation, such as forcing EIS to re-plat the property subject to language that is not present in the restriction.

None of the arguments identified by the dissent shows that a one-residence reading of this restriction is unreasonable. For example, the dissent points out that some of the parties' proposed readings would "effectively do[] away with" or "functionally nullify" the restriction so that it "serves no purpose at all." *Post* at 8, 10. Not so the one-residence reading. Without the restriction, a tract owner could build two or more residences on a sub-five-acre tract. The one-residence reading gives effect to the restriction's reasonable implication by limiting such a tract to a single residence.

The dissent also appears to have settled on an "intent of the original parties" that "their neighborhood would not become jam-packed

15

with homes," which it would employ to overcome the lack of any text restricting minimum tract size. *Id.* at 4, 12. In particular, the dissent labels "subdividing [the original parcels] into parcels of less than five acres" as "avoid[ing] the restriction" even though the text does not prohibit such subdivision. *Id.* at 10. But as the omitted-case canon explains, it is not a judge's role to enforce unstated intentions by filling perceived gaps—especially in property law where clear notice is critical. *See U.S. Polyco, Inc. v. Tex. Cent. Bus. Lines Corp.*, 681 S.W.3d 383, 390 (Tex. 2023) (explaining that the interpretive task "does not authorize courts to ensure that every provision comports with some grander theme or purpose"); *Cosgrove v. Cade*, 468 S.W.3d 32, 40 (Tex. 2015) ("The virtues of legal certainty and predictability are nowhere more vital than in matters of property ownership, an area of law that requires bright lines and sharp corners.").

The parties to the original deed could easily have bargained for a minimum-tract-size restriction if they wanted to avoid subdivision. But they did not, and there is no textual basis for reading this incomplete density restriction to contain a de facto minimum-tract-size restriction that makes sub-five-acre tracts unusable by a single record owner.

Nor is there any reason to think we must depart from the text to avoid "destabilizing countless restrictions" or inviting "those seeking to build high-density subdivisions" to run roughshod over "the rural lifestyle" buyers want. *Post* at 12, 13. The language of this particular restriction is far from standard fare: the Land Office developed six levels of bespoke restrictions for its sales of surplus Super Collider land, and the Association does not point us to any authority indicating that the

16

Level 5 restrictions imposed here are in common use. Whether differently worded restrictions might yield a different result is a question we need not decide today.

It is also no answer to say we do not have to address "uncertain" applications or how the restriction might apply in "certain factual situation[s]," the "finer details" of which are simply "not before us." *Id.* at 6, 9. The parcels have been platted into sub-five-acre tracts, and the trial court declared that putting one house on each tract would violate the restriction. So the decision before us is whether there is zero, one, or more than one reasonable interpretation of the restriction as it applies to the current facts on the ground—that is, of how many residences can be built on these platted tracts. *See Tarr*, 556 S.W.3d at 284; *Davis*, 620 S.W.2d at 565-66. As explained, the only reasonable implication from the text of the restriction is that two houses cannot be built on any sub-five-acre tract, but it does not prevent owners from building one house there. We therefore hold that the court of appeals erred in affirming the trial court's contrary declarations and injunction.

## II.    Waiver or abandonment counterclaim

EIS next argues that regardless of whether its planned development would violate this or other restrictions, the Association and its members have waived or abandoned their right to enforce the Level 5 Restrictions in their entirety. Waiver is "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right." *Teal Trading & Dev., LP v. Champee Springs Ranches Prop. Owners Ass'n*, 593 S.W.3d 324, 334 (Tex. 2020). It "is a question of intent, examining whether a party's conduct, in light of the surrounding

17

facts and circumstances, is unequivocally inconsistent with claiming" a right. *Id.* at 334-35 (cleaned up). One can waive a right expressly or by "silence or inaction." *Tenneco Inc.*, 925 S.W.2d at 643; *see also Cowling v. Colligan*, 312 S.W.2d 943, 945 (Tex. 1958) (noting that courts may "refuse to enforce [a restrictive covenant] because of the acquiescence of the lot owners in such substantial violations within the restricted area as to amount to an abandonment of the covenant or a waiver of the right to enforce it").[10]

EIS identifies two bases for waiver, both of which fail. First, EIS claims the adjoining landowners waived their right to enforce the restriction by failing to object to the property being platted into sub-five-acre lots. But objecting based on the restrictions would have been futile because neither Ellis County nor the City of Waxahachie can enforce deed restrictions in the plat-approval process.[11] And "once the

---

[10] EIS argues that *Cowling* prescribed a distinct waiver doctrine in the context of enforcing deed restrictions. We disagree. Waiver of a restrictive covenant by acquiescence in its violation is consistent with general waiver principles, which we and the courts of appeals, including in opinions cited by EIS, continue to apply in cases involving enforcement of deed restrictions. *See, e.g.*, *Tarr*, 593 S.W.3d at 328, 334-35; *see also Nolan v. Hunter*, No. 04-13-00072-CV, 2013 WL 5431050, at *7 (Tex. App.—San Antonio Sept. 25, 2013, no pet.) (mem. op.).

[11] The Local Government code limits municipal enforcement of deed restrictions to (a) certain municipalities with more than 1.5 million in population and (b) municipalities without zoning ordinances. TEX. LOC. GOV'T CODE §§ 212.151, 212.153. Waxahachie, which has a population of approximately 35,000 and has zoning ordinances, thus lacks the ability to enforce deed restrictions. Ellis County also lacks authority for the enforcement of a developer's deed restrictions, as such authority rests "solely with the developer, property owner, purchaser, or landowner's association." ELLIS CNTY. DEP'T OF DEV., COUNTY OF ELLIS RULES, REGULATIONS, AND SPECIFICATIONS FOR SUBDIVISIONS AND MANUFACTURED HOMES, § 5-O.

18

relevant governmental unit determines that a plat conforms to applicable regulations, it has a ministerial duty to approve that plat." *Schroeder v. Escalera Ranch Owners' Ass'n, Inc.*, 646 S.W.3d 329, 332 (Tex. 2022) (citing TEX. LOC. GOV'T CODE §§ 212.005, 212.010).

Failing to make a futile objection, standing alone, is not enough to establish waiver. Waiver depends on whether the party's conduct is "unequivocally inconsistent with claiming" the right in question. *Teal*, 593 S.W.3d at 336. Not making a futile objection is not inconsistent with claiming the underlying right at all, let alone "unequivocally" so. *See Underwood v. Webb*, 544 S.W.2d 187, 190 (Tex. Civ. App.—Waco 1976, writ ref'd n.r.e.) (explaining that a violation that "could not have been prevented . . . cannot be relied on to support a waiver or abandonment").

Second, EIS argues the Association and its members waived their right to enforce the restrictions because there have been numerous violations of deed restrictions within the Super Collider's former area. For example, EIS points out that adjoining landowners failed to challenge the development of other nearby subdivisions that would have violated the restrictions. But the parties have stipulated that none of the properties comprising those subdivisions adjoin the land of any of the parties to this suit. Thus, even assuming those properties were subject to the same restrictions, the Association lacked standing to enforce the deed restrictions on non-adjoining properties. Failing to enforce a nonexistent right is in no way inconsistent with enforcing an existent right. Therefore, neither the Association nor the adjoining-landowner parties to this suit have waived or abandoned their right to enforce the restrictions.

19

## III.    Changed-conditions counterclaim

Next, we turn to EIS's changed-conditions counterclaim. We hold that the trial court erred by refusing to allow the jury to consider changes that occurred after the restriction was created but before EIS (or Salvador Family Holdings) purchased the parcels. Because the jury was erroneously instructed to consider only evidence of post-purchase changes in reaching its verdict, we conclude a new trial is required on this counterclaim.

A court may refuse in equity to enforce a deed restriction when "there has been such a change of conditions in the restricted area or surrounding it that it is no longer possible to secure in a substantial degree the benefits sought to be realized through the" restriction. *Cowling*, 312 S.W.2d at 945.[12] Changes making the lot "unsuitable" for the restriction are not enough. Courts must balance the harm to the restricted owner against "the equities favoring the lot owners who, having acquired their property on the strength of the restriction, wish to preserve the . . . character of the area." *Id.* at 946.

This Court has yet to decide whether changes occurring after the restriction was created, but before the owner seeking to avoid the restriction acquired the burdened property, are relevant to the changed-conditions defense. Some courts of appeals have held they are

---

[12] *See also* RESTATEMENT (THIRD) OF PROP. (SERVITUDES) § 7.10 (AM. L. INST. 2000) ("When a change has taken place since the creation of a servitude that makes it impossible as a practical matter to accomplish the purpose for which the servitude was created, a court may modify the servitude to permit the purpose to be accomplished. If modification is not practicable . . . a court may terminate the servitude.").

not. *See, e.g.*, *Lebo v. Johnson*, 349 S.W.2d 744, 752 (Tex. Civ. App.—San Antonio 1961, writ ref'd n.r.e.) ("Appellees cannot claim as changed conditions those that had already taken place at the time they purchased their lots and received their deeds containing a reference to the restriction of residential use only."); *Oldfield v. City of Houston*, 15 S.W.3d 219, 228 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (citing *Lebo* for the proposition that an owner relying on changed conditions "may not complain of the changes which had already taken place in the area when he acquired the property at issue").

The Association contends this rule makes sense because someone who purchases with notice of changed conditions does not experience the same loss as an owner who faces unanticipated changes. It argues that a purchaser who wants to buy free from a restriction should "seek to have the restriction removed before purchasing the property." *Wood v. Dozier*, 464 So. 2d 1168, 1170 (Fla. 1985).

The problem with the post-purchase rule, though, is that the changed-conditions doctrine is not about notice, nor about a distinction of rights between a longtime owner and a recent purchaser. Equities, including disproportion between harm and benefit, are certainly relevant. *See Cowling*, 312 S.W.2d at 946. But as *Cowling* makes clear, the core of the analysis is whether it remains "possible to secure in a substantial degree the benefits sought to be realized through" the restriction. *Id.* at 945. The doctrine is meant to prevent "obsolete servitudes . . . interfer[ing] with desirable uses of land." RESTATEMENT (THIRD) OF PROP. (SERVITUDES) § 7.10 cmt. a (AM. L. INST. 2000). The analysis therefore turns largely on considerations of a restriction's

obsolescence, purpose, and effect. A new owner has no effect on those considerations. *See id.* cmt. c ("The test for finding changed conditions . . . is often said to be whether there has been such a radical change in conditions *since creation* of the servitudes that perpetuation of the servitude would be of no substantial benefit." (emphasis added)).

Further, when interpreting a deed restriction, we focus on "the objective intent of the [restriction's] *drafters*" as "reflected in the language chosen." *Tarr*, 556 S.W.3d at 280 (emphasis added). If that intent can no longer be realized, it follows that the restriction can no longer be enforced. Accordingly, we hold that a factfinder must consider all changes since creation of a restriction to determine whether the changed-conditions doctrine precludes enforcement of the restriction. We disapprove those opinions holding otherwise.

The trial court erred in holding that only post-purchase changes could be considered and in instructing the jury to that effect over EIS's objection. "When a trial court gives an erroneous charge that instructs the jury on the incorrect law applicable in the case," the appropriate remedy is a new trial. *Glenn v. Leal*, 596 S.W.3d 769, 772 (Tex. 2020).

## IV. Joinder

Finally, EIS argues the trial court erred in denying EIS's plea in abatement to join the State of Texas and nonparty adjoining landowners as necessary parties. Because the issue is likely to arise on remand, we address it here. *See Masterson v. Diocese of Nw. Tex.*, 422 S.W.3d 594, 609 (Tex. 2013); *MCI Sales & Serv. v. Hinton*, 329 S.W.3d 475, 495 n.19 (Tex. 2010).

"When a party seeks to compel joinder of persons as parties to a proceeding, including a declaratory-judgment action, Texas Rule of Civil Procedure 39 governs." *In re Kappmeyer*, 668 S.W.3d 651, 655 (Tex. 2023). Rule 39(a)(2), on which EIS relies, requires joinder of persons who, among other things, "claim[] an interest relating to the subject of the action." TEX. R. CIV. P. 39(a)(2).

We have held that to "claim" an interest is "to demand recognition of (as a title, distinction, possession, or power) esp. as a right" or "to assert or establish a right or privilege." *Kappmeyer*, 668 S.W.3d at 656 (quoting *Crawford v. XTO Energy, Inc.*, 509 S.W.3d 906, 912 (Tex. 2017)). But Rule 39 does not require joinder of a nonparty "who *potentially* could claim an interest in the subject of the action; it requires joinder, in certain circumstances, of persons who *actually* claim such an interest." *Crawford*, 509 S.W.3d at 914 (emphases added).

EIS asserts that the adjoining landowners have claims by virtue of their deeds and the State has a statutory claim because it created the restrictions. EIS emphasizes that these parties have a right to participate in any determination of rights under the deed restrictions. The Association, on the other hand, argues that the claims and counterclaims do not implicate the rights of the State or other adjoining property owners in a manner that requires their joinder.

We agree with the Association and conclude that the remaining counterclaim does not require joinder. The record does not indicate that either the nonparty adjoining landowners or the State have sued, objected to the platting, or taken any other action demanding or asserting their interest in the Properties' deed restrictions.

23

Citing *Crawford*, EIS argues that the landowners have "claimed an interest in the subject of the litigation through their deeds" because their right to enforce the restriction arises from those deeds. *Id.* at 913 (distinguishing prior cases requiring joinder of "absent parties [who] expressly claimed an interest in the subject of the litigation through their deeds and leases"). We rejected that argument in *Kappmeyer*. In that case, property owners sued their homeowner's association, seeking a declaration that amendments to the subdivision's restrictive covenants were unenforceable. 668 S.W.3d at 654. We held that all other property owners in the subdivision need not be joined; even though they could be affected by the ultimate judgment in the suit, they had taken no steps to "claim an interest." *Id.* at 658. In so holding, we explained that the deed-based cases we distinguished in *Crawford* predated Rule 39 and applied a common-law rule that allowed joinder of persons who "*have or claim* a direct interest." *Id.* at 658 n.9. Because Rule 39 specifically requires *claiming* an interest, those cases "are of limited usefulness." *Id.* Moreover, the interests considered in *Kappmeyer*, like those here, arose from absent parties' deeds. *Id.* at 657. We nevertheless focused on the "difference between having an interest and claiming one" and held that joinder was not required. *Id.* at 658. Under *Kappmeyer*, the nonparty adjoining landowners are not necessary parties.

EIS's claim that the State is a necessary party fares no better. EIS cites a statute authorizing the State to enforce a "restriction expressed in a transfer document . . . conveying real property then owned by the state." TEX. NAT. RES. CODE § 31.068(a)(2). The statute

24

confirms that, as with the absent parties in *Crawford* and *Kappmeyer*, the State certainly "*could* claim an interest in the subject of the action." *Kappmeyer*, 668 S.W.3d at 657. But "having" an interest is not "claiming" one. *Id.* And EIS offers no reason to treat the State any differently for purposes of evaluating mandatory joinder under Rule 39. Accordingly, the trial court correctly denied EIS's plea in abatement.

## CONCLUSION

Given our construction of the "no more than two residences" deed restriction, we reverse the judgment awarding the Association declaratory and injunctive relief to halt EIS's development and render judgment that the Association take nothing on its claims. In addition, having concluded that the jury was improperly instructed on EIS's changed-conditions counterclaim, we reverse the judgment as to changed conditions and remand for a new trial on that claim.

J. Brett Busby
Justice

**OPINION DELIVERED:** June 13, 2025

25